1    **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2    Name    KASTLE, CHAD EDWARD

3        (Last)                    (First)                    (Initial)

4    Prisoner Number    P86598

5    Institutional Address    31625 HIGHWAY 101, P O BOX 1050

6    SOLEDAD, CALIFORNIA 93960-1050

7                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
8

9    CHAD EDWARD KASTLE
     (Enter the full name of plaintiff in this action.)

10                    vs.                    Case No. **C08  03138  JF**
                                            (To be provided by the Clerk of Court)

11    KAREN Y. KIRBY, MD

12    MICHAEL S. EVANS, WARDEN                **COMPLAINT UNDER THE**
                                            **CIVIL RIGHTS ACT,**
13    CORRECTIONAL SERGEANT, "JANSEN"         **Title 42 U.S.C § 1983**

14    AS DOE 1, SUED OFFICIALLY & INDP.
     (Enter the full name of the defendant(s) in this action)

15

16    *[All questions on this complaint form must be answered in order for your action to proceed..]*

17    I.    Exhaustion of Administrative Remedies.

18        [**Note:** You must exhaust your administrative remedies before your claim can go

19        forward. The court will dismiss any unexhausted claims.]

20        A.    Place of present confinement    SALINAS VALLEY STATE PRISON

21        B.    Is there a grievance procedure in this institution?

22                    YES (**X**)        NO ( )

23        C.    Did you present the facts in your complaint for review through the grievance

24            procedure?

25                    YES (**X**)        NO ( )

26        D.    If your answer is YES, list the appeal number and the date and result of the

27            appeal at each level of review. If you did not pursue a certain level of appeal,

28            explain why.

COMPLAINT                    - 1 -

1        1. Informal appeal  **BYPASSED BY ADMINISTRATIVE STAFF**

2        **SEE ATTACHED INMATE APPEAL**

3

4        2. First formal level  **BYPASSED BY ADMINISTRATIVE STAFF**

5

6

7        3. Second formal level  **DENIED IN TOTAL, APPEAL LOG**

8        **NUMBER: SVSP-B-08-00671**

9

10       4. Third formal level  **PARTIALLY GRANTED, APPEAL LOG**

11       **NUMBER: IAB-0725515**

12

13    E.    Is the last level to which you appealed the highest level of appeal available to

14        you?

15            YES (**X**)    NO ( )

16    F.    If you did not present your claim for review through the grievance procedure,

17  explain why.  **N/A**

18

19

20  II.    Parties.

21    A.    Write your name and your present address.  Do the same for additional plaintiffs,

22        if any.

23  **CHAD E. KASTLE CDCR # P86598, POB 1050, SOLEDAD, CA 93960**

24

25

26    B.    Write the full name of each defendant, his or her official position, and his or her

27        place of employment.

28  **KAREN Y. KIRBY, MD (STAFF PSYCHIATRIST), CURRENTLY EMPLOYEED**

COMPLAINT            - 2 -

1  AT SALINAS VALLEY STATE PRISON, 31625 HWY 101, SOLEDAD, CA

2  93960; MICHAEL S. EVANS, WARDEN OF SALINAS VALLEY STATE PRISON

3  ; (DOE # 1) CORRECTIONAL SERGEANT, "JANSEN", EMPLOYEED AT

4  SVSP AT THE TIME OF INCIDENT.

5  III.    Statement of Claim.

6      State here as briefly as possible the facts of your case.  Be sure to describe how each

7  defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8  cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9  separate numbered paragraph.

10  ON 7-25-07 I MET WITH STAFF PSYCHIATRIST KAREN Y. KIRBY, MD

11  TO RENEW MY PSYCHIATRIC MEDICATION.   CONCLUDING THIS SESSION

12  DR. KIRBY CONTENDED THAT I WAS UNDER THE INFLUENCE OF A

13  CONTROLED SUBSTANCE AND CONTACTED CORRECTIONAL SERGEANT

14  JANSEN (DOE #1) DISCLOSING HER ASSESSMENT, AND REQUESTED THAT

15  I SUBMIT TO A URINE ANALYSIS THROUGH CORRECTIONAL OFFICER

16  MARTINEZ.  I DECLINED THIS TEST KNOWING IT TO BE A RETALITORY

17  ACTION ON THE PART OF DR. KIRBY FOR MY CHALLENGING HER POSITION

18  AND SUBSEQUENTLY RECEIVED A RULES VIOLATION REPORT AND A

19  WAS ASSESSED A FOREITURE OF 90 DAYS OF EARNED GOOD-TIME.   THIS

20  IS A MATTER OF PSYCHIATRIST-PATIENCE CONFIDENCIALITY AND OF

21  RIGHT OF PRIVILEGE DISCLOSURE FOR DISCIPLINADY MEANS.   THIS

22  MATTER WAS APPEALED THROUGH ALL ADMINISTRATIVE LEVELS.

23  IV.    Relief.

24      Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25  what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26  ASSESS CONSEQUENTIAL DAMAGES OF DR. KAREN Y. KIRBY IN THE

27  AMOUNT OF $5,297.74 (ACCORDING TO PROOF); ASSESS EXEMPLARY

28  DAMAGES OF DR. KIRBY IN THE AMOUNT OF $1,000.00;   ASSESS

COMPLAINT                          - 3 -

1    EXEMPLARY DAMEGES OF MICHAEL S. EVANS (WARDEN) IN THE AMOUNT

2    OF $1,000.00; ASSESS NOMINAL DAMAGES OF (DOE # 1) CORRECTIONAL

3    SERGEANT "JANSEN" IN THE AMOUNT OF $0.01.///

4

5    I declare under penalty of perjury that the foregoing is true and correct.

6

7    Signed this ___24th___ day of ___June___, 20_08_

8

9                                      _____

10                                        (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                       - 4 -

## EXHIBIT A

| Page No. | Description of Document: |
|----------|--------------------------|
| 1-2 | Administrative Appeal (double-sided) |
| 3-4 | Second Level Response to appeal |
| 5-9 | My Response to Second level decision |
| 10-11 | Director's level response to appeal |
| 12-34 | Cited memorandum from director's level |
| 35-40 | Rules Violation Report (RVR) |
| 41-43 | Subsequest Administrative Appeal |
| 44-46 | Subsequest Administrative Appeal |
| 47-48 | Rescended Administrative Appeal |

is is an exact Case 5:08-cv-03138-JF Document 1-2 Filed 06/30/2008 Page 2 of 50 rrently do not ve regular access to a copy mac e. I attest under penalty of ury that this is an exact re- ped copy of my Appeal.

Chad E. Kastle, P86598, In pro per,

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| KASTLE, Chad Edward | P86598 | PTR-B.521 B52W | B-5-204 |

A. Describe Problem: Inmate KASTLE [Hereinafter referred to as, "Petitioner"] seeks injunctive relief under the Federal Rights Act, 42 U.S.C. §1983, and §1997e(a) as well as citing case Coleman vs. Wilson (E.D.Cal.1995) 912 F.Supp.1282. Petitioner also seeks injuctive relief under, California Government Code §810, as well as cite case law, People vs. Delgado (1989) 262 Cal.Rptr 122 at page 130 when citing, Kayhea vs. Rushing (1986) 178 Cal.App.3d 526, also see The Sixth Montering Report Of The Special Master, filed 10/10/2000; Coleman vs. Davis (E.D.Cal.2000) No.Civ. S 90-0520 LKK. (cont. on Attached page)

If you need more space, attach one additional sheet:

RECD FEB 07 2008

B. Action Requested: Grant Injunctive Relief requested by Petitioner in such that Dr. Kerby be permanantly removed from practicing any profession within the California Departmant of Corrections and Rehabilitation here forth. The California Attorney General file a formal complaint with the State Licensing (cont. on Attached page)

Inmate/Parolee Signature: _____ Date Submitted: 08/02/2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

**BYPASS**

Staff Signature: _____ Date Returned to Inmate: _____

INMATE APPEALS BRANCH

RECEIVED MAR 10 2008

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____ Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

# BYPASS

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved: _____ Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

# BYPASS

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☑ Denied ☐ Other 2/11/08     Due Date: 3/24/08

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☑ See Attached Letter

Signature: _____ Date Completed: 2/26/08

Warden/Superintendent Signature: Jo Jones, CDW (A)     RET'D FEB 29 2008     Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Please See attachement to this appeal labled Section "H", for this Section

Signature: _____ Date Submitted: 3-4-08

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☒ P. Granted ☐ Denied ☐ Other _____

☐ See Attached Letter

Date: JUN 13 2008

CDC 602 (12/87)

Continuation of CDC 602 dated for 08/02/2007

A: - Petitioner claims that during an interview of 07/25/2007, he and his primary care psychiatrist, Dr. Kerby, discussed possibly taking Petitioner off his current prescribed dosage of 50mg of Paxil (Antidepressant), and reducing it to 20mg over the next two weeks as Petitioner seemed agitated at his current dosage, displaying both anxiety and slight paranoia. At the mention of reducing Petitioner's current dosage, Petitioner became very argumentitive and refused to sign any INFORMED CONSENT form to have the psychiatrist reduce his dosage. Dr. Kerby continued to suggest that he seemed very agitated, showing signs of SSRI (Selective Serotonin Reuptake Inhibitors) overload, or possibly High on Methamphetamines. To which Petitioner explained he suffers from Bipolar Disease (Documented throughout his mental health record ), and that his enlarged puplis were dialated as a side effect of his medication (Also documented in petitioner's health file) which is the reason petitioner has a prescription for transition lenses. Petitioner requested that Dr. Kerby review his medical file to which Dr. Kerby refused, stating only that she knew Petitioner was high, and medication does not cause this side effect. Petitioner and Dr. Kerby persistantly argued about lowering the dosage of Paxil, to which Petitioner strongly refused to consent to, being that he knew the effect of doing so results in relapse (see mental Health file). Dr. Kerby took advantage of her position as facility psychiatrist to discipline Petitioner for challenging her professional conduct, and appointed custody staff, NOT medical staff, conduct a UA (urine Analysis) of Petitioner. When Officer S. Martinez approached Petitioner requesting him giving a UA, Petitioner declined knowing this to be a retaliatory action, steming from his refusal to sign an INFORMED CONSENT form to remove Petitioner from his relying treatment.

Petitioner is filing this Administrative Appeal so as to exhaust his lesser remedies in accordance with 42 U.S.C. §1997e(a), and Bishop vs. Lewis (9th Cir. 1998) 155 F3d. 1094.

B: - Board, National Institute of Mental Health, Board of Behaviour Sciences, California State Board of Pharmacy, Medical Board of Calif., Board of Psychology, and the Department of Comerce regarding Dr. Kerby's missuse of her position as a Psychiatrist, and a person. Reverse all Actions both advertent and inadvertent caused by Dr. Kerby's actions aginst Petitioner (including CDC 115, LOG# B07-07-0036) on 07/25/2007 and hereafter.

## VERIFICATION

I, Chad E. Kastle, CDC&R# P86598 attest under penalty of perjury that the foregoing statment is true and correct.

_____
CHAD E. KASTLE, P86598
Petitioner, In Pro Per.

DATED THIS 2nd DAY OF AGUST 2007

attachments: CDC115 dated 07/30/2007, CDC115-C, Dated 07/31/2007, and CDC115-A, Dated 07/31/2007

cc/ck

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:    February 26, 2008

To:    Inmate KASTLE, P-86598
       Salinas Valley State Prison


Subject: SECOND LEVEL APPEAL RESPONSE LOG NUMBER SVSP-B-08-00671

### ISSUE:

The appellant states that on July 25, 2007, a psychiatrist violated the patient/physician confidentiality by informing staff that the appellant was "high". The appellant attached CDC Form 115, Rules Violation Report (RVR), Log #B-07-07-0036, dated July 25, 2007 for "Refusal to Test for Controlled Substances" to his appeal as an exhibit.

The appellant requests that the psychiatrist be removed from practicing any profession within CDCR.

### REGULATIONS:

CCR Title 15 §3315 Serious Rule Violations
CCR Title 15 §3318 Assistance to Inmates for Serious Rule Violations
CCR Title 15 §3320 Hearing Procedures and Time Limitations
CCR Title 15 §3323 Disciplinary Credit Forfeiture Schedule

### SUMMARY OF INVESTIGATION:

The First Level of Review was bypassed per CCR 3084.5(b). Eloy Medina, Appeals Coordinator, was assigned to investigate this appeal at the Second Level of Review. The appellant was interviewed by Eloy Medina on February 8, 2008. During interview, the appellant stated that he did not refute what was written on the RVR.

In accordance with the CCR §3084.5 (h) Disciplinary Appeals; the RVR and supporting documentation is reviewed for procedural or due process requirements. All submitted documentation and supporting arguments have been considered. Additionally, a thorough examination has been conducted regarding the claim presented by the appellant and evaluated in accordance with Salinas Valley State Prison Operational Procedures (OP); the CCR; and the Departmental Operations Manual (DOM).

The appeal was reviewed by the Hiring Authority and rejected as a staff complaint. Therefore, the appeal was categorized and responded to as a disciplinary appeal.

**Inmate KASTLE, P-86598**
**Appeal Log Number SVSP-B-08-00671**
**Page 2 of 2**

A review of the RVR indicates that the appellant was charged with CCR 3290(d), for the specific act of "Refusal to Test for Controlled Substances." The charge was classified as a Division "D" offense.

The discovery date of the RVR was 7/25/07. The RVR notes the appellant received his copy of the RVR on 8/1/07, which was within fifteen (15) days of the discovery. The appellant was provided with his copy of the entire RVR. The RVR was not referred to the Monterey County District Attorney's (DA) office for possible prosecution. The appellant attended the disciplinary hearing held on 8/5/07, which is within thirty (30) days of the RVR being issued to the appellant.

A Staff Assistant was not assigned as the appellant's TABE score is above 4.0.

Appellant was a participant in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) level of care. The circumstances of the RVR did not indicate that the appellant displayed any bizarre behavior that would raise concerns about his mental health.

An Investigative Employee (IE) was not assigned in accordance with CCR 3315(d)(1). The appellant did not request any evidence or witnesses.

The SHO determined a guilty finding, documented a preponderance of evidence, and assessed ninety (90) days credit loss commensurate with a Division "D" offense.

The appellant states that he is not appealing the RVR, he is appealing the breach of confidentiality by the psychiatrist.

In accordance with the headquarters memoranda titled "Processing Confidential Disclosures by Contract Clinicians in Lifer Prisoner Hearing Processes" dated February 11, 2008 and "The Parameters of Confidentiality of Inmate-Patient Communications and Guidelines for Disclosure" dated 4/18/07, the disclosure of confidential information to appropriate non-clinical staff is mandatory when there are signs and symptoms that an inmate is in a state of acute intoxication, secondary to either illegal substances or prescribed medications.

In conclusion, this review finds that the appellant was afforded all due process and there was no breach of confidentiality.

**DECISION**: The appeal is DENIED.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

*G.A./NEOTTI*
Chief Deputy Warden
Salinas Valley State Prison

Section "H" of CDC-602, LOG # SVSP-B-08-00671, Aug. 2, 2007
Inmate Kastle, Chad E., CDCR # P-86598, FB-5-102L
March 04, 2008

H) Because of inconsistancies and misconstrued facts surrounding
the circumstances of the second level review by CCII Medina and
CDW Neotti, I am requesting a third level (Director's level)
review of this appeal.

On August 02, 2007 I filed this CDCR-602 under the "Describe
Problem", of section A.. The original appeal was subsequently
misplaced or lost in route to the appeals coordinator and
numerous, attempts to salvage the lost/misplaced appeal through the
08-19-07 CDC-GA-22 (Inmate Request For Interview. Form), 05-09-07
CDC-602 (Inmate/Parolee Appeal Form), and the 09-17-07 (CDC-602)
were either not answered or where screened-out by CCII Medina.
(see, these documents as permanant attachments to this appeal)
Being that I could not further exhaust my administrative appeals
remedies, due to the frivoulous, "Screen-Out" (CDCR-695 Form)
attachments, I deemed the exhaustion requirement inadequate and
initiated a Petition for Writ of Habeas Corpus in the Monterey
County Superior Court for redress. (see attached Petition)
The Monterey Co. Superior Court denied my petition on the ground
that I failed to fully exhaust the administrative remedies as
required prior to filing a Habeas Corpus Petition. I further
filed an appeal with the Sixth Appellate District Court of
Appeals for relief. The 6th App. Dist. denied my Habeas Corpus
Petition without comment. (see attached Petition) Currently I
have filed for review of said Petition in the California Supreme
Court and currently await response. (see attached Petition).

On 02-07-08 I again attempted to resolve this matter by submitting
a fourth CDC-602. The following day I met with CCII Medina
regarding this Appeal. After the interview I agreed to resend
the instant CDC-602 as CCII Medina agreed to accept the Original
08-02-2007, CDC-602, after over six months had passed.

On March 03, 2008 I received the appeal back where both CCII
Medina and ADW Neotti had denied my appeal.

Section "H" (Continued) of CDC-602, LOG # SVSP-B-08-00671, 08-2-07
Inmate Kastle, Chad E., CDCR # P-86598, FB-5-102L
March 04, 2008
Page 2

The issues I am appealing to the Director's Level are such that the Summary of Investigation conducted by CCII Medina and CDW Heotti, are inconsistent with the documentation surrounding this incident.

At the "Action Requested" section of this appeal, I requested that, "The California Attorney General file a formal complaint with the State Licensing Board, National Institute of Mental Health, The Board of Behavioural Sciences, The California State Board of Pharmacy, The Medical Board of California, The Board of Psychology, and the Department of Commerce regarding Dr. Kirby's abuse of her position as a psychiatrist...Reverse **all actions both advertant and inadvertant caused by Dr. Kirby's actions against Petitioner, (including RVR-115, LOG # B07-07-0036)** on 07-25-2007 and hereafter.", and not mearly the appeal coordinator's perfunctory response that I, "Request that the psychiatrist be removed from practicing and profession within CDCR." as the sole relief for this appeal. (see Original Appeal at Section A)

The main purpose of this appeal is to, one, have my 90 days of forfeited credits restored (due to the RVR) and to have the RVR-115 expunged from my record for a lack of legal suficiancy whereupon the information to warrant the confrontataion by custody staff which ultimately resulted in the RVR. The Statute is clear in Both California and Federal Law that information gained by illegal means cannot be used to convict a person, thus such info gained by these means would result in grounds for dismissal of charges which resulted from that information. This doctrine is firmly established in United States Law as the, Fruit-of-the-poisonous-Tree-Clause.

Further, in the 2nd level appeal response by CCII Medina, he states that I [appellant] did not refute what was written on the RVR. This is contrary to the truth, as I do refute what is written on the RVR. In the Original RVR, part C of Dr. Kirby's supplemental report, Dr. Kirby states that she consulted with my regular

Section "H" (Continued) of CDC-602, LOG # SVSP-B-08-00671, 8-2-07
Inmate Kastle, Chad E., CDCR # P-86598, FB-5-102L
March 04, 2008
Page 3

Clinition, Dr. M. Schneider, Psy. D, after the July 25, 2007
interview with me (which ultmately resulted in the RVR and this
Appeal) concerning whether or not I was outside of my "normal"
baseline, and whether or not a toxicology screening should be
conducted.  After I spoke with Dr. Schneider regarding Dr. Kirby's
statement, Dr. Schneider contested what is written in the RVR
by Dr. Kirby, as she did not concur that I should be tested by
custody staff.  (see, attached Petition @ Exhibit page 26-C, and
RVR attached)

Further, CCII Medina and/or CDW Neotti, attached as supporting
documentation to warrant the denying of the 2nd level, two
seperate memorandums.  The First memorandum on the subject of:
"Processing Confidential Disclosures by Contract Clinitions in
Life Prisoner Hearing Process", which was dated for 02-11-2008.
This memorandum would not apply to me a$ 1) I am not a lifer
inmate, therefore will not attend any Lifer hearing, and 2) the
memorandum was initiated over six months after the incident to
which this appeal is addressing, and would violate both State and
Federal Ex Post Facto law were it allowed as reasons for denial
of my appeal.  The Second memorandum on the subject: "The
Parameters of Confidentiality of Inmate-Patient Communications
& Guidelines For Disclosure", would only apply to me if I,
"posed a threat to the safelty and security of the institution",
or, "Possed a danger to self or others".  Neither of these
circumstances were noted in any documentary evidence against me,
further, after the July 25th interview, Dr. Kirby simply sent me
back to recreational yard to continue out my day.  This most
certainly would not have been the case had I acted in the above
manner. (see attached memorandums)  These memorandums would not
apply to this appeal or matter as the wording at 15 CCR §3361(c)
regarding confidential information would trump any and all
disclosure laws because of Dr. Kirby's misconduct.
Simply put, if Dr. Kirby had wanted to, for medical reasons,

Section "H" (Continued) of CDC-602, LOG # SVSP-B-08-00671, 8-2-07
Inmate Kastle, Chad E., CDCR # P-86598, FB-5-102L
March 04, 2008
Page 4

1

2

3  **test** me for any controlled substance, her own regulation state

4  that she shall request this "Medical Test" through "Medical Staff"

   **not custody Staff**, so as the matter does not serve to discipline
5
   the inmate for confiding in his treating psychotherapist. (see
6  petition for adjucation of this contention)

7  WHEREFORE, for the reasons set forth herein and in the documents

8  incorporated by reference, I respectfull request that the Director

   of Corrections grant the relevant portion of the action requested
9
   section of this appeal thus granting the restoration of my 90
10 days of forfeited credits due to RVR-115, LOG # B07-07-0036 of

11 07-25-2007.

12 I contest under penalty of perjury that the foregoing statement

13 is true and correct.  Dated this 4th day of March, 2008.

14                              Respectfully Submitted,

15

16                              Chad E. Kastle, CDCR # P-86598
                                Inmate, SVSP.
17

18  [attachments]:
                    08/02/2007 (Original Appeal)
19                  02/07/2008 (Resended Appeal)
                    10-05-2007 (Petition for Writ of HC)
20  cc:  Chief, Inmate Appeals
         1515 S. Street
21       Sacramento, CA 95814

22       Cheif Psychologist, Mental Health Program
         Div. of Correctional Health Care Services (DCHCS)
23       ATTN: Dr. Shama Chaiken, Ph.D
         P.O.Box 942883
24       Sacramento, CA 94283-0001

25

26

27

28

cc/ck03042008.001

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN 1 3 2008

In re:    Chad Kastle, P86598
Salinas Valley State Prison
P.O. Box 1020
Soledad, CA 93960-1020

IAB Case No.: 0725515          Local Log No.: SVSP-08-00671

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner L. Warren, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #B07-07-0036, dated July 25, 2007, for Refusal to Test for Controlled Substances. It is the appellant's position that during an interview with his primary care psychiatrist, Dr. Kirby, on July 25, 2007, they discussed possibly reducing the appellant's current prescribed dosage of Paxil to which the appellant adamantly refused. Dr. Kirby suggested the appellant seemed agitated and anxious with glassy eyes and dilated pupils. Thereafter, Dr. Kirby requested that custody staff obtain a urine sample from the appellant to determine if he was under the influence of controlled substances. The appellant refused the order and subsequently received the present RVR. The appellant contends that because Dr. Kirby inappropriately requested a urine sample, then his refusal should not matter. He is requesting to have the RVR expunged from his record, to have the 90 days of forfeited credits restored, to have Dr. Kirby permanently removed from practicing any profession within the CDCR, and for the California Attorney General to file a formal complaint with the State Licensing Board and other professional boards against Dr. Kirby.

**II    SECOND LEVEL'S DECISION:** The reviewer at the Second Level interviewed the appellant who stated that he is not appealing the RVR; he is appealing the breach of confidentiality by Dr. Kirby. However, the appellant continued to request that the RVR disposition be vacated; such request is in essence an appeal of the RVR. The reviewer determined that the charge was appropriately classified as a Division "D" offense, the hearing was held within mandated time frames and, the appellant was provided procedural safeguards during the hearing. The Senior Hearing Officer (SHO) found the appellant guilty based on a preponderance of evidence and assessed a disposition appropriate to the classification of the charge. With regard to the appellant's allegation of breach of confidentiality, the reviewer determined that the treating physician may, pursuant to the April 18, 2007 memorandum entitled "The Parameters of Confidentiality of Inmate-Patient Communications and Guidelines for Disclosure," reveal confidential information to appropriate non-clinical staff when there are signs and symptoms that an inmate is in a state of acute intoxication, secondary to either illegal substances or prescribed medications.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is granted in part.

**A.    FINDINGS:** The Director's Level of Review reviewed the appellant's issues and reaffirms the institution's examination and conclusions relative to the RVR. The issue of alleged staff misconduct is addressed below. This review finds that the RVR was appropriately classified and the appellant received his copy within 15 days of the date of discovery of the evidence leading to the charges. The charges did not meet criteria for referral to prosecuting authorities. The appellant did not meet the criteria for assignment of a Staff Assistant or Investigative Employee. The appellant received a copy of all non-confidential documents to be relied upon at the hearing at least 24 hours before the hearing and the hearing was held within 30 days of the date the appellant received the initial copy of the RVR. The appellant plead not guilty at the hearing and made the following statement, "I have to deal with it on appeal." He did not request any witnesses. The SHO deliberated on the evidence and explained in the RVR his rationale for arriving at the guilty finding. In arriving at the finding, the SHO appropriately applied the preponderance-of-evidence standard for administrative hearings. The SHO assessed

CHAD KASTLE, P86598
CASE NO. 0725515
PAGE 2

authorized dispositions and informed the appellant of his right and the procedure to appeal the finding and/or disposition. Based on all documents presented, there is no reason to dismiss the RVR or modify the disposition. An inmate is subject to orders for urinalysis to test for controlled substances, whether such request is initiated for cause or randomly.

With regard to the alleged staff misconduct (breach of confidentiality), the examiner remands this appeal back to the institution for processing as a staff complaint pursuant to Administrative Bulletin (AB) 05/03. Although the appellant does not use the term "staff complaint," he is clearly making a staff complaint against Dr. Kirby. However, since an inquiry was not completed, it is not known what confidential information, if any, was actually revealed.

AB 05/03 directs that when a staff complaint includes other issues, the appellant shall be advised to file a separate appeal of the other issues. In this case, the institution has processed the RVR issue, but has failed to process the staff complaint, combining instead a conclusion on the staff complaint without benefit of an inquiry.

**B. BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3016, 3315, 3316, 3318, 3320, 3321, 3323
CDC Operations Manual Section: 52010.17, 52010.18, 52010.20

**C. ORDER:** The Salinas Valley State Prison (SVSP) shall make a separate copy of this appeal and process it as a staff complaint pursuant to AB 05/03. The allegation of breach of confidentiality by medical staff reaches the threshold of staff complaint and shall not be processed as a disciplinary appeal. The hiring authority shall direct whether the staff complaint is processed by means of a confidential inquiry or by referral to Office of Internal Affairs, as directed in AB 05/03.

This issue was discussed with Chief Deputy Warden.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SVSP
       Appeals Coordinator, SVSP

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date: April 18, 2007

To: Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)

Subject: **THE PARAMETERS OF CONFIDENTIALITY OF INMATE-PATIENT COMMUNICATIONS AND GUIDELINES FOR DISCLOSURE**

The purpose of this memorandum is to ensure that confidentiality of inmate-patient communications with mental health clinicians is protected.

**Overview**

Health care delivered in prison is constitutionally adequate when it meets community standards, or those established for correctional settings by national correctional health care organizations. One area where there is significant and recognized differences between community and correctional standards is that of confidentiality.

Confidentiality of the inmate-clinician relationship is based on ethical and legal principles. One example of a well-known limitation to confidentiality, in the community and in prisons, is the *Tarasoff* ruling: Where a patient tells a clinician that he or she intends to harm a readily identifiable person, then the clinician has a duty to protect, which may at times be discharged by warning the identified person and/or law enforcement. For additional information, reference Attachment A, Assembly Bill 733, amendment to Section 43.92 of the California Civil Code.

In prisons, confidentiality is further limited by the interests of people (staff and inmates) and property (the institution's physical plant and its environment), which together constitute a concept commonly referred to as "the safety and security of the institution."

All staff that intentionally, accidentally or inadvertently overhears confidential communications (arising from clinical contacts such as cell front visits) is also responsible for maintaining confidentiality of the communication.

There are many familiar situations where strict and traditional healthcare confidentiality is compromised, such as during pill lines, during Interdisciplinary Treatment Teams (IDTT) meetings because the team composition includes custody officers, and during cell front visits. Custody officers, correctional counselors, and other staff who are members of an IDTT are bound to not discuss health-related inmate-patient information with anyone other than the team members.

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 2

In general, written clinical records, which often include documentation of conversations conducted in a private clinical setting, are entitled to the same protections as in the community. Clinicians should familiarize themselves with relevant State and federal laws (such as Health Insurance Portability and Accountability Act - HIPAA), which basically require written consent from patients for release of medical information outside of the treatment team. Exceptions arise, however, when information obtained by a clinician in the course of a therapeutic encounter, creates a set of security concerns that are much broader than those in the community. For example, if an inmate tells a clinician that he or she possesses a weapon, the clinician must report it to custody in the interest of protecting the safety and security of the institution. In a private practice setting, as an example, such a disclosure would not ordinarily be reported to the police.

To date, there are no nationally accepted guidelines/laws that govern all instances of limitations to confidentiality in a correctional setting. Therefore, the California Department of Corrections and Rehabilitation (CDCR) has developed guidelines regarding the handling of information disclosed in the context of an inmate clinician relationship, and during a clinical encounter.

**Definitions**

- For purposes of this policy, the general term of "clinician" is used when referring to psychiatrists, physicians, psychologists, clinical social workers, nurse practitioners, registered nurses, licensed vocational nurses, licensed psychiatric technicians, and recreational therapists.

- A "clinician-patient relationship" is established in the correctional setting when a clinician is engaged in the evaluation/assessment/diagnosis and/or treatment of a mental or emotional condition. A communication by an inmate, within the clinician patient relationship, to a clinician, is considered confidential if the inmate does not intend it to be disclosed to third persons.

- The location where a confidential communication occurs is referred to, in this memorandum, as the "clinical setting."

- A "clinical encounter" occurs when a clinician communicates with an inmate-patient in a clinical setting.

- The "safety and security of the institution" refers to and involves people (self, others, the community) and property (the institution's physical plant and environment).

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 3

- The adjective "acute," in reference to intoxication, is a medical term that means "of abrupt onset," in reference to a disease or condition. Acute often also connotes a condition that is of short duration and in need of urgent attention. Further, for the purpose and clarification of this policy, "acute" essentially means signs and symptoms of being under the influence in the here-and-now.

**Guidelines**

These guidelines apply to all clinicians working within, or on behalf of, the CDCR as well as any nonclinical staff who overhear confidential communications.

A. Disclosure
The disclosure of confidential information to nonclinical staff is permissible when:

1.  The inmate is suicidal and it is clinically necessary to inform others in order to protect the inmate-patient.

2.  The inmate is:

    a.  Receiving psychotropic medication: as an example, custody may need to know (without disclosing specifics) that an inmate is on a medication that causes side-effects that may interfere with the ability to follow orders or participate in programming.

    b.  Being noncompliant with medication: as an example, custody may need to be informed that an inmate is medication noncompliant and needs to be restrained for the administration of such, pursuant to a *Keyhea* order.

3.  The inmate requires movement to a special unit for observation, evaluation, or treatment of acute episodes.

4.  The inmate requires transfer to a treatment facility outside the prison.

The disclosure of confidential information to appropriate nonclinical staff is mandatory when:

1.  The inmate is homicidal, by virtue of either conduct or oral statements, and there is a reasonably identifiable victim.

2.  The inmate specifically admits to, or leads the clinician to a reasonable suspicion of, child or elder abuse (clinicians are trained to recognize those situations requiring a report).

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 4

3.  The psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be a danger to him/herself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger, by virtue of any of the following:

   a.  An inmate's conduct/behavior, including possession of a weapon.

   b.  An inmate's oral statements, including communications such as those that indicate a plan for drug trafficking or a plan for sexual misconduct.

   c.  Signs and symptoms that an inmate is in a state of acute intoxication, secondary to either illegal substances or prescribed medications (nonphysicians shall seek immediate consultation with a physician when they suspect acute intoxication). Refer to Page 6 of this memorandum for additional details.

4.  The inmate presents a reasonably clear risk of escape or the creation of internal disorder or riot.

Clinicians shall not use the CDCR counseling or disciplinary process to report confidential communications such as thoughts, feelings, fantasies, or behaviors of inmate-patients which do not indicate any of the risks detailed in the above guidelines.

B. Scope of Disclosure

Only limited and relevant healthcare information should be shared, and only with those nonclinical staff who have a need to know. In situations where disclosure of confidential communication is deemed permissible, the clinician has the responsibility to weigh the potential harm and benefit of both maintaining confidentiality and of disclosing the information, in order to determine if disclosure is necessary.

In certain instances (such as, for example, matters involving communications that indicate a plan for drug trafficking or a plan for sexual misconduct) the clinician, exercising clinical judgment, may elect to report the inmate's behaviors and statements in general terms to custody staff, without identifying the specific inmate by name. Whenever a clinician elects to provide notification in this manner, they shall first seek consultation with a supervisor, and the two shall engage in the custody notification together.

More often than not, disclosure/non - disclosure issues cannot wait for presentation at a scheduled IDTT meeting. Therefore, when the clinician needs guidance regarding disclosure versus nondisclosure, the clinician should consult with a supervisor or

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 5

colleague and document the consultation in the Unit Health Record. If a consensus cannot be reached between the clinician and a supervisor/colleague, the issue/case should be elevated up the local chain of command, first within the healthcare structure, and then, if indicated, with the custody management structure.

Discussions beyond the level of the clinician and a supervisor/colleague should contain as little revelation of identifying information as possible until a consensus is reached. If necessary, the Warden and Health Care Manager can elevate the issue/case to Regional Administrators and Regional Mental Health/Medical Directors for guidance. If necessary, these regional managers can elevate the matter for further guidance.

## Duty To Disclose Limits Of Confidentiality

Clinicians are responsible for informing the inmate-patient of the above limits of confidentiality, or ensuring that prior documentation in the Unit Health Record (UHR) indicates that this disclosure has occurred prior to commencement of a clinical encounter. CDCR Form 7448 Informed Consent For Mental Health Care shall be used for this purpose (see Attachment B).

Inmates should be informed that communication disclosed to a clinician, within the limits described in the guidelines above, and documented in the UHR, is generally confidential, but that information obtained in the context of a court ordered evaluation (such as for a Board of Prison Hearings determination, competency to stand trial, parole/probation reports, etc.) is not.

## Illegal Substance Use and Sexual Misconduct

Illegal substance use (including alcohol and inmate manufactured "pruno") and sexual misconduct warrant special consideration for the clinician working in a CDCR environment.

In regard to illegal substance use, clinicians commonly solicit information about such in the course of formulating an accurate diagnosis and the development of an appropriate treatment plan. Inmates need to feel confident that they can openly and honestly discuss use/abuse/addiction issues with their clinician without fear of rules violation reporting or criminal prosecution. Inability to have this type of confidential communication with a health care provider could pose a limitation in terms of access to care, which is potentially an 8th Amendment violation.

Scenarios involving acute intoxication or disclosure of planned use of illegal substances requires careful clinical judgment, utilizing the guidelines above (particularly in terms of

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 6

danger to self or others), in determining whether or not to disclose the information to custody. If an inmate solicits and is granted confirmation of confidentiality from the clinician prior to disclosing information about illegal substance use, it is incumbent upon the clinician to stop the inmate and warn of the potential need to disclose if the course of the conversation shifts in a direction that raises the issue of potential dangerousness. The guiding principle is to be helpful to the inmate seeking assistance with a problem that affects his or her health (and conceivably would thereby benefit the safety and security of the institution) within the confines of the limits of confidentiality outlined in this policy.

Issues surrounding the trafficking (buying, selling, possession, illegal trade, movement, transporting) of illegal substances are reportable. If, during a private communication in a clinical setting, an inmate starts to disclose information regarding the trafficking of illegal substances, the clinician should stop the inmate and warn of the duty to disclose, thereby allowing the inmate the opportunity to stop or proceed with full disclosure.

Sexual misconduct within the confines of a clinical setting, such as indecent exposure, intentionally sustained masturbation without exposure (such as under the clothing), or verbal/written epithets, sometimes occur in a therapeutic context. An inmate should be encouraged to discuss the feelings, motivations, fantasies, compulsions, etc., behind these behaviors, but also be warned that the actual behaviors themselves are violations of institutional policy, and sometimes State law. The clinician shall instruct the inmate-patient to cease the illegal behaviors immediately, and shall inform them that a continuation of such behaviors shall result in termination of the therapeutic session and a reporting of the incident(s). The clinician is permitted to exercise clinical judgment in determining how to best handle these clinical situations, and, when in doubt, the clinician should seek consultation with a supervisor or colleague. The reporting of sexual misconduct behaviors that occur in a private clinical setting is not always mandatory. As an example, the reporting of an initial incident is left to the discretion of the clinician. The clinician shall, however, instruct the inmate-patient to immediately cease the behavior and shall review the Department's policy regarding sexual misconduct with the inmate-patient, but may elect not to report the incident. Once the clinician has provided this instruction and reviewed the rules with the inmate-patient, all subsequent incidents of sexual misconduct shall be reported via the rules violation reporting process.

When in doubt about issues related to illegal substance use and/or sexual misconduct, seek consultation utilizing the above guidelines. These types of decisions are often difficult and involve multiple complex moral, ethical, legal, humanistic and practical dilemmas and issues that include the inmate's access to care, the safety and security of the inmate, the safety and security of coworkers, as well as the general safety and security of the institution.

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 7

The conscientious clinician will never go wrong in seeking consultation and documenting the outcome of such.

## Procedure For Disclosure Of Confidential Information

When a decision is made to disclose confidential information, the clinician shall document, in the progress notes and treatment plan, consideration of:

1. The best way to limit the extent of disclosure while still preventing the threatened harm.

2. The potential strain to the therapeutic relationship with the clinician.

3. Any other relevant issues in regard to the therapeutic relationship and treatment goals, such as the potential need to reassign the inmate-patient's care to another clinician for the purpose of continued proper and sufficient access to care.

## Psychiatric Services Unit Considerations

Inmates who are receiving Enhanced Outpatient Program (EOP) level-of-care and are serving a Secure Housing Unit (SHU) term are housed in the Psychiatric Services Unit (PSU). These PSU programs utilize "Behavioral Incentive Programs" in granting privileges and property. Clinicians may continue to use the CDCR counseling or disciplinary process to document ONLY inmate misconducts that occur outside a clinical setting, and/or when the exceptions listed in the guidelines above are applicable.

## Use of the Disciplinary Process

When a clinician documents an inmate-patient's behavior using the CDCR disciplinary process, the clinician shall use a draft report worksheet. It is the responsibility of the custody-classifying official to designate the seriousness of the reported behavior, and whether it is categorized as a 128A Counseling Chrono or a CDCR Form 115 Rules Violation Report.

## Training

Attachment C includes scenarios to be used for training purposes. A schedule for staff training on this topic will be distributed under separate cover.

Executive Staff
Associate Directors-Division of Adult Institutions
Regional Parole Administrators (Juvenile and Adult)
Regional Administrators-Division of Correctional Health Care Services
Superintendents
Wardens
Health Care Managers (Juvenile and Adult)
Page 8

**Questions**

If you have any questions regarding this memorandum, you may contact Shama Chaiken, Ph.D., Chief Psychologist, Mental Health Program, Division of Correctional Health Care Services (DCHCS), at (916) 445-4114 or Michael Stone, J.D., Staff Counsel, Coleman Case, Office of Legal Affairs (OLA), at (916) 324-1421.


BRIGID HANSON
Director (A)
Division of Correctional Health Care Services

LEA ANN CHRONES
Director (A)
Division of Adult Institutions

Attachment

cc: Michael Stone, General Counsel, OLA
    Doug McKeever, Director (A), Mental Health Program, DCHCS
    Tim Rougeux, *Plata* Implementation Project Director, DCHCS
    Peg McAloon, Ph.D., Chief Psychologist, Mental Health Program, DCHCS
    Shama Chaiken, Ph.D., Chief Psychologist, Mental Health Program, DCHCS
    Andrew Swanson, M.D.; Chief Psychiatrist, Mental Health Program, DCHCS
    Mary Huttner, SSM I, DCHCS, QMAT
    Joseph Moss, Correctional Captain, DAI
    Mary Neade, Correctional Counselor II, DAI

**ATTACHMENT A**
Assembly Bill 733

AMENDED IN SENATE JUNE 5, 2006

AMENDED IN ASSEMBLY MAY 10, 2005

CALIFORNIA LEGISLATURE—2005–06 REGULAR SESSION

# ASSEMBLY BILL                                No. 733

## Introduced by Assembly Member Nation

February 17, 2005

An act to amend Section 43.92 of the Civil Code, relating to personal rights.

LEGISLATIVE COUNSEL'S DIGEST

AB 733, as amended, Nation. Psychotherapists: duty to warn.

Existing law provides that no monetary liability and no cause of action shall arise against a psychotherapist, as defined, for failing to warn and protect from a patient's threatened violent behavior except where the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims. *Existing law also specifies that if there is a duty to warn and protect under the limited circumstances specified above, that duty is discharged by the psychotherapist making reasonable efforts to communicate the threat to the victim or victims and to a law enforcement agency.*

This bill would revise that provision to specify that it applies where the patient himself or herself has communicated the threat to the psychotherapist. The bill would also encourage a therapist, if a patient's threat has been communicated to the therapist by a third party, to contact the patient to the extent that the therapist reasonably believes is necessary to assess whether the patient poses a serious threat of physical violence against a reasonably identifiable victim or

AB 733 — 2 —

~~victims. The bill would specify that the amendments apply only to~~
~~actions filed on or after January 1, 2006.~~

*This bill would revise that latter provision to instead specify that*
*there is no monetary liability and no cause of action shall arise*
*against a psychotherapist who, under the limited circumstances*
*described above, discharges his or her duty to warn and protect by*
*making reasonable efforts to communicate the threat to the victim or*
*victims and to a law enforcement agency.*

Vote: majority.  Appropriation: no.  Fiscal committee: no.
State-mandated local program:  no.

*The people of the State of California do enact as follows:*

1  ~~SECTION 1.  Section 43.92 of the Civil Code is amended to~~
2  ~~read:~~
3  ~~43.92.  (a)  There shall be no monetary liability on the part of,~~
4  ~~and no cause of action shall arise against, any person who is a~~
5  ~~psychotherapist as defined in Section 1010 of the Evidence Code~~
6  ~~in failing to warn of and protect from a patient's threatened~~
7  ~~violent behavior or failing to predict and warn of and protect~~
8  ~~from a patient's violent behavior except where the patient~~
9  ~~himself or herself has communicated to the psychotherapist a~~
10  ~~serious threat of physical violence against a reasonably~~
11  ~~identifiable victim or victims.~~
12  ~~(b) If there is a duty to warn and protect under the limited~~
13  ~~circumstances specified above, the duty shall be discharged by~~
14  ~~the psychotherapist making reasonable efforts to communicate~~
15  ~~the threat to the victim or victims and to a law enforcement~~
16  ~~agency.~~
17  ~~(c) Notwithstanding subdivision (a), if a patient's threat has~~
18  ~~been communicated to the therapist by a third party, the therapist~~
19  ~~is encouraged, but not required, to contact the patient to the~~
20  ~~extent that the therapist reasonably believes is necessary to assess~~
21  ~~whether the patient poses a serious threat of physical violence~~
22  ~~against a reasonably identifiable victim or victims.~~
23  ~~(d) The amendments made to this section by the act adding~~
24  ~~this subdivision shall apply only to actions filed on or after~~
25  ~~January 1, 2006.~~
26  SECTION 1.  *Section 43.92 of the Civil Code is amended to*
27  *read:*

97

—3—                    **AB 733**

1    43.92. (a) There shall be no monetary liability on the part of,
2   and no cause of action shall arise against, any person who is a
3   psychotherapist as defined in Section 1010 of the Evidence Code
4   in failing to warn of and protect from a patient's threatened
5   violent behavior or failing to predict and warn of and protect
6   from a patient's violent behavior except where the patient has
7   communicated to the psychotherapist a serious threat of physical
8   violence against a reasonably identifiable victim or victims.
9    (b) ~~If there is a duty to warn and protect under the limited~~
10  ~~circumstances specified above, the duty shall be discharged by~~
11  ~~the psychotherapist making reasonable efforts to communicate~~
12  ~~the threat to the victim or victims and to a law enforcement~~
13  ~~agency.~~ *There shall be no monetary liability on the part of, and*
14  *no cause of action shall arise against, a psychotherapist who,*
15  *under the limited circumstances specified above, discharges his*
16  *or her duty to warn and protect by making reasonable efforts to*
17  *communicate the threat to the victim or victims and to a law*
18  *enforcement agency.*

O

**ATTACHMENT B**
**Informed Consent For Mental Health Care**

STATE OF CALIFORNIA
**INFORMED CONSENT FOR MENTAL HEALTH CARE**
CDCR 7448 (06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

## INFORMED CONSENT FOR MENTAL HEALTH CARE

Date: _____

Time: _____

_____ met with me and discussed the mental health care services offered in the
        Print Provider's Name

California Department of Corrections and Rehabilitation.

I understand that:

- I do not have a choice about my housing, but I can decide whether or not to participate in mental health treatment.
- In some mental health programs, I can earn privileges by participating in my mental health treatment plan.
- Information I discuss with my mental health clinician may be discussed with custody staff, nursing staff, and other staff who are part of my treatment team.
- The team will usually keep my personal information private, unless they decide it is necessary to share information with others in order to protect my safety, or the safety or property of other people. For example, if I talk to a mental health clinician and I am under the influence of alcohol or illegal drugs, the clinician will decide if this needs to be reported to custody staff. My clinician might write a report that could lead to a Rules Violation Report (115).
- If I expose my genitals or masturbate during a confidential individual or group clinical session, my clinician might write a report that could lead to a Rules Violation Report (115).
- I may receive involuntary treatment if, as a result of my mental or emotional state, I pose a danger to others, or myself, or I am unable to care for myself.
- Mental health clinicians keep notes in my medical record, also called the Unit Health Record. If I am scheduled to appear before the Board of Parole Hearings for possible parole, this record may be reviewed by staff writing reports to the Board of Parole Hearings.
- If I receive a Rules Violation Report (115), a mental health clinician who is not my regular case manager may ask to talk to me about my behavior and the situation that led to the 115. If I talk to this mental health clinician, the things I say are not confidential, and might be written down on a form that goes into my Central File.

My clinician offered to answer questions about mental health treatment in the prison setting, and the information above.

Inmate's Signature _____

---

I have discussed limits to confidentiality with the inmate patient:

☐ It is my opinion that s/he has the capacity to understand the potential risks and benefits of participation in mental health services.

☐ It is my opinion that although the inmate meets criteria for inclusion in the Mental Health Services Delivery System, s/he may have difficulty understanding the risks and benefits of participation. Clinicians treating this inmate-patient should continue to clarify the limits to confidentiality.

Additional Information:
_____
_____
_____

_____            _____
Clinician's Signature                Clinician's Classification

CDC NUMBER, NAME (LAST, FIRST, MI), INSTITUTION AND DATE OF BIRTH

12/28/06 DRAFT

DEPARTMENT OF CORRECTIONS AND REHABILITATION

STATE OF CALIFORNIA
**INFORMED CONSENT FOR MENTAL HEALTH CARE**
CDCR 7448 (06/06)

Page 2 of 2

## INSTRUCTIONS

Prior to commencement of a clinical encounter, clinicians are responsible for informing the inmate-patient of the limits to confidentiality, or ensuring that prior documentation on this form is in the Unit Health Record, indicating that this disclosure has occurred.

Document the date and time of the discussion with the inmate-patient.

Print the provider's name.

Discuss limits to confidentiality with the inmate-patient.

Ask the inmate-patient to consent by signing the form. Document in "Additional Information" if the inmate-patient is unable or unwilling to sign the form.

Check one of the boxes in the bottom section of the form.

Add any other relevant information regarding the inmate-patient's ability to give informed consent.

Sign the form, and indicate the classification of the clinician signing the form (e.g. Psychiatrist, Psychologist, Clinical Social Worker, and Senior Psychologist).

12/28/06 DRAFT

**ATTACHMENT C**
**Examples for Confidentiality Training**

## EXAMPLES FOR CONFIDENTIALITY TRAINING

### Scenerio A – Substance Use

A custody officer overhears a mental health clinician talking to an inmate-patient at cell front. The inmate admits that she used marijuana one week ago. She is not currently under the influence, and claims that she does not have any more marijuana.

### Appropriate Response

The information was disclosed in the context of a clinician-patient relationship, during a clinical encounter. All staff who intentionally, accidentally, or inadvertently overhear confidential communication are responsible for maintaining confidentiality of the communication.

Neither the clinician, nor the custody officer should use the disciplinary process to report this information. The officer should not disclose the identity of the inmate to other officers. If it is deemed necessary to protect the safety and security of the institution, the officer may notify custody supervisors of the need to be alert for illegal substances during cell and unit search, without disclosing the identity of the specific inmate who was overheard talking to the clinician

### Scenerio B – Escape Plan

An inmate discloses, during a confidential individual session, a credible plan to escape from prison. The clinician assesses that the inmate presents a reasonably clear risk of escape.

### Appropriate Response

The clinician should have already discussed limits of confidentiality with the inmate-patient before this conversation begins. At the point that the inmate begins to disclose the escape plan, the clinician should remind the inmate-patient that disclosure will be necessary (unless this reminder could pose an immediate danger to the clinician). The clinician should tell the inmate-patient that discussing fantasies about escape is better than acting on them, and should encourage the inmate-patient to make the disclosure himself. Statements such as :"I believe you told me because you wanted help stopping yourself from acting on this plan," could be helpful. If the inmate-patient refuses to disclose the information to custody, the clinician -shall disclose the information by documenting what the inmate-patient said, and providing this documentation to custody staff. The clinician should not determine whether this documentation should or should not lead to a Rules Violation Report.

### Scenerio C – Danger to Self/Possession of Dangerous Contraband

A custody officer overhears a clinician talking to an inmate-patient at cell front. The inmate reports that he has taken his safety razor apart, because he was thinking about

harming himself, but has decided not to cut himself with it. He gives the razor blade, in a paper bag, to the clinician.

## Appropriate Response

The information was disclosed in the context of a clinician-patient relationship, during a clinical encounter. All staff who intentionally, accidentally, or inadvertently overhear confidential communication are responsible for maintaining confidentiality of the communication.

Neither the clinician, nor the custody officer should use the disciplinary process to report this information. The officer should not disclose the identity of the inmate to other officers.

The clinician has reasonable cause to believe that the patient is in such a mental or emotional condition as to be dangerous to himself. Disclosure that the inmate had the razor blade may, or may not be necessary to prevent the threatened danger. The clinician may give the razor blade to custody staff for safe disposal without disclosing the name of the inmate. The clinician should only disclose the name of the inmate if it is deemed necessary to prevent the inmate from harming himself or others. For example, if the clinician suspects that the inmate may have additional razor blades in the cell, or in possession, the clinician may request that a search be conducted.

The clinician –is required to see the inmate-patient in a confidential setting, and conduct a complete suicide risk assessment. The clinician may indicate that the inmate-patient needs to be evaluated on an emergency basis, due to suicidal ideation. Based on the clinician's information about the inmate-patient's history of suicide risk, and the assessment of current risk, the clinician may refer the inmate to a psychiatrist, place the inmate in an Outpatient Housing Unit for further evaluation/observation, order suicide observation (watch or precautions), and/or refer the inmate-patient to a Mental Health Crisis Bed.

## Scenerio D – Sexual Fantasies in Individual Sessions

An inmate-patient discloses in an individual session that he has sexual fantasies about his clinician. He gives his clinician a letter detailing the fantasies.

## Appropriate Response

Clinicians *shall not* use the CDCR counseling or disciplinary process to report confidential communications such as thoughts, feelings, or fantasies.

The clinician should tell the inmate-patient that it is common for patients to have sexual feelings about their therapist. The clinician should indicate that sex is <u>never</u> part of professional therapy, and may use literature designed to educate mental health patients regarding this topic. The clinician should indicate that the therapeutic relationship can be confused with an intimate or romantic relationship, and explain the difference between

these types of relationships. The clinician should indicate that the inmate's feelings expressed in the correctional setting could be considered "overfamiliarity," and the clinician should explain the reasons for these rules. Taking into account the mental health treatment plan, the clinician response can vary. In many cases, it is appropriate to set a limit that further discussion of sexual fantasies will not be tolerated. In limited cases, where the inmate has enough impulse control, and is able to process the feelings as part of the therapeutic process, further discussion may be allowed after discussion and approval of clinical supervisor including documentation in the UHR . Inmate-patients should NOT be encouraged to sexually stimulate themselves by relaying fantasies to a mental health clinician.

If the clinician sets a limit restricting further discussion of sexual fantasies, and the inmate-patient does not stop writing or relaying fantasies, the clinician should discuss this with a supervisor or peer review group. The inmate-patient may need to be assigned to a different clinician.

### Scenerio E- Sexual Fantasies in the Group Setting

An inmate-patient participates in group therapy for survivors of sexual abuse. She writes detailed sexual fantasies about a licensed psychiatric technician (LPT) who facilitates group therapy, and gives the writing to the LPT at the end of a group therapy session.

### Appropriate Response

For the purpose of the confidentiality policy, the LPT is a mental health "clinician." The information was disclosed within the context of a "clinician-patient relationship" and did not intend that the information be disclosed to third persons.

The LPT should discuss the situation with the inmate-patient's primary clinician. In many cases, a meeting between the clinician, LPT, and inmate-patient would be appropriate. The clinician should tell the inmate-patient that it is common for patients to have sexual feelings about their mental health providers. The clinician should indicate that sex is never part of professional therapy, and may use literature designed to educate mental health patients regarding this topic. The clinician should indicate that the therapeutic relationship can be confused with an intimate or romantic relationship, and explain the difference between these types of relationships. The clinician should indicate that the inmate's feelings expressed in the correctional setting could be considered "overfamiliarity," and the clinician should explain the reasons for these rules. The inmate-patient should be told that the feelings about the LPT can be discussed in individual therapy, after provisions and parameters of the therapy are agreed upon by the clinical supervisor and assigned clinician, but should not be disclosed directly to the LPT in written or verbal form, in the future.

Based on the inmate-patients response to counseling about the issue, the LPT and primary clinician should make a joint decision about whether the inmate-patient should continue to participate in the assigned group. If the communication regarding sexual fantasies

continues despite setting limits, the inmate-patient should be removed from the group therapy situation with that specific LPT. If inappropriate communication continues, and poses a danger to the mental or emotional health of the LPT, the clinician should discuss the situation with a supervisor or peer review group and weigh the potential harm and benefit of both maintaining confidentiality and of disclosing the information, in order to determine if disclosure is necessary. Actions taken may be to elicit help from custody staff to reduce or eliminate contact between the LPT and the inmate-patient. The inmate counseling or disciplinary process should be utilized only as a last resort.

### Scenerio F – Fantasies about harming others

An inmate-patient reveals to a therapist that he has a persistent intrusive fantasy about killing correctional officers. His thoughts about killing correctional officers occur every day, and intensify when he is being escorted by officers. He has a past history of violent behavior. He reports that he believes he will one day act on this fantasy, if he gets the chance. He is not focused on harming any particular officer, but states, "When an officer puts his hands on me, I feel like killing him."

### Appropriate Response

The clinician should have already discussed the limits of confidentiality with the inmate-patient before beginning this discussion. At the onset of this content, the clinician should tell the inmate that talking about these fantasies in therapy is better than acting on them. The clinician should be clear that if disclosing the information could keep officers safe, it will be disclosed. The clinician should elicit as much information about the fantasy as possible, and assess the inmate-patients current intent and means to harm or kill an officer, including the past history of impulsive violent behavior. The clinician should consider placement in a Mental Health Crisis Bed if the risk could be imminent. The clinician should encourage the inmate to talk to a custody supervisor about the thoughts, in order to make custody staff aware of the situation. This may require, especially for inmates in a general population setting, a discussion of the potential consequences of disclosure, including placement into Administrative Segregation. If the inmate discloses the information to custody staff, the content is no longer confidential. However, the inmate's mental health condition should be considered in any decision about whether to use the disciplinary process to document the information disclosed.

If the inmate decides not to disclose the information, the clinician must balance the cost and benefit of disclosing the information. In this case, because the inmate has a past history of violence, has expressed a belief that the violence will occur, and has provided information that could reasonably identify potential victims, the clinician is required to take action to prevent harm. Disclosure to custody staff is necessary to prevent the threatened danger, and it should be documented in the form of an informational chrono. The treatment plan should clearly indicate that reduction of homicidal ideation is a target goal. This goal will be discussed in the interdisciplinary treatment team process, with officers and custody supervisors present.

### Scenerio G

An inmate in a Level 1 setting requests to see a mental health clinician. He comes to the session and his breath smells strongly like alcohol. The clinician reminds the inmate about the limits of confidentiality, indicating that if an inmate is intoxicated and thereby a danger to himself or others, the clinician may need to report the intoxication. The clinician then asks the inmate-patient if he has been drinking alcohol, and he denies it. His speech is slurred and his gait is unsteady. The clinician does not have immediate access to the Central File, and cannot determine if the inmate has a history of violent behavior, however, understands that inmates in a Level 1 setting are not generally serving prison time for violent behavior.

### Appropriate Response

This inmate-patient demonstrates signs and symptoms of acute intoxication, or another serious medical condition. If the clinician is not a psychiatrist, the clinician should request immediate consultation with a physician. The inmate-patient should be held in a safe location until appropriate medical care can be administered. If intoxication is determined to be the most likely cause of the symptoms, the physician and mental health clinician shall assess the harm and benefit of both maintaining confidentiality and of disclosing the information to custody, in order to determine if disclosure is necessary. Review of the central file may be a key element in the determination of whether this inmate-patient is at risk of harming others. The level of intoxication and any other statements made by the inmate-patient should be considered in the decision.

The mental health clinician and physician may disclose the acute intoxication if disclosure is necessary to prevent harm to others or to the inmate patient. The inmate requires further medical observation and evaluation until the symptoms of slurred speech and unsteady gait remit or are definitively diagnosed.

Because the presence of alcohol and other drugs in the corrections setting can pose a threat to the safety and security of the institution, custody staff need to be notified of the possible presence of alcohol or illegal substances in the facility. However, this may be accomplished without disclosing any specific information about the inmate-patient. The CDCR counseling or disciplinary process should not be used by clinical staff to document intoxication unless it is combined with other evidence of dangerousness to others, or to the person or property of another person, such as in the case of an inmate making specific threats to harm a reasonably identifiable victim or victims while intoxicated.

### Scenerio H – Indecent Exposure

An inmate exposes his genitals and masturbates during an individual therapy session (or during group therapy).

**Appropriate Response**

The clinician should immediately tell the inmate to stop the behavior. In most cases, it is not prudent to continue therapy while the inmate-patient is sexually aroused. The clinician should generally request that the inmate be returned to his housing unit. Exceptions to this rule include situations in which an inmate is being assessed for suicide risk or for decompensation of symptoms of mental illness that may require a higher level of care. In this case, the clinician can request that a supervisor or peer join the session, and may continue the evaluation.

If this is the first time the inmate exhibited sexual misconduct, and the behavior is not related to severe decompensation of a mental illness, the clinician may choose to warn the inmate-patient that future incidents of sexual misconduct may be documented in a way that could lead to a Rules Violation Report and potential referral to the District Attorney for criminal prosecution. If the inmate-patient clearly understood the consequences, or had prior episodes of sexual misconduct, the clinician -will document the behavior and provide this documentation to custody staff. The clinician -shall - inform the interdisciplinary treatment team and reason(s) for the sexual misconduct will be addressed including whether the inmate-patient should be transferred to a new primary clinician. -, The treatment plan should include elimination of sexual misconduct and methods of treatment (e.g. identifying thoughts or situations that lead to the behavior; motivational interviewing; parole preparation and future planning…etc.).

**Scenerio I – Threat to Harm an Inmate**

Inmate X is involved in mutual combat (fighting) with his cell mate, inmate Y. After the inmates are placed into an Administrative Segregation Unit, they both report that they have worked out the problem, and sign a form indicating that they are not enemies. Inmate X is included in CCCMS level of care. In a routine session with the therapist, the inmate states, "I'm not over it. If I get back out to the yard, I'll hurt inmate-Y as soon as I get a chance." Inmate-patient X has a history of mental health symptoms that have resulted in diagnoses of Depression Not Otherwise Specified, Post Traumatic Stress Disorder, and Anxiety Disorder.

**Appropriate Response**

The clinician should have already discussed the limits of confidentiality with the inmate-patient before beginning this discussion. At the onset of this content, the clinician should tell inmate-patient X that talking about the desire to harm the other inmate during therapy is better than acting on the thoughts. The clinician should be clear that if disclosing the information is necessary to prevent inmate X from harming inmate Y, it will be disclosed. The clinician should elicit as much information about the violent thoughts as possible, and assess the inmate-patients current intent and means to harm the other inmate, including the past history of impulsive violent behavior. The clinician could consider placement in a Mental Health Crisis Bed if the violent thoughts are related to a psychiatric decompensation. The clinician should encourage the inmate to talk to a

custody supervisor to request that inmate Y be considered an enemy. This should include a discussion of the potential consequences of the disclosure, including extension of time in Administrative Segregation and the possibility that a Rules Violation Report may be written if inmate-patient X makes a direct threat against Y when speaking to custody staff. If the inmate discloses the information to custody staff, the content is no longer confidential. However, the inmate's mental health condition should be considered in any decision about whether to use the disciplinary process to document the information disclosed.

If this strategy works and inmate-patient X will not be placed on the yard with inmate Y, further disclosure (e.g. to inmate Y) is generally not necessary. If inmate-patient X is not willing to disclose the information, the clinician must take action that will protect inmate Y including notifying custody staff to place the inmates back on each other's enemy lists. If the clinician has reason to believe that inmate-patient X intends to harm inmate Y when they both leave prison (to discharge, parole, or civil commitment), and disclosure is necessary to prevent the threatened harm, the clinician must take appropriate action to notify custody, law enforcement, and inmate Y.

The treatment plan should clearly indicate that reduction of violent ideation is a target goal. This goal will be discussed in the interdisciplinary treatment team (IDTT) process, with officers and custody supervisors present. Custody staff members are responsible for maintaining confidentiality of information presented in IDTT.

If the inmate is not willing to speak to a custody supervisor, and the clinician determines that disclosure is necessary to prevent the threatened danger, the disclosure should be documented in the form of an informational chrono.

804 Sent To Records O___ 7-30-0___ By ___(SN)___

STATE OF CALIFORNIA

## RULES VIOLATION REPORT

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | | | | | |
|---|---|---|---|---|---|---|---|
| P-86598 | KASTLE | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. | |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS | EPRD/7-11-2010 | SVSP | B5-204U | B07-07-00 | |
| CCR §3290(d) | | REFUSAL TO TEST FOR | LOCATION | DATE | | TIME | |
| CIRCUMSTANCES | | CONTROLLED SUBSTANCES | Fac. 'B' HEALTH ANNEX | 07/25/07 | 1330 HRS. | | |

On July 25, 2007, at approximately 1330 hours, while I was assigned as Bravo Work Crew Officer, I was instructed by B-Yard Sergeant Jansen to conduct a urinalysis on Inmate KASTLE, P-86598, B5-204U, at the request of B-Yard medical staff Dr. Kirby.  I had Inmate KASTLE report to B-Medical Health Annex.  I handed Inmate KASTLE a pair of latex gloves and a urine specimen container and instructed Inmate KASTLE to give me a urine sample.  Inmate KASTLE handed me back the above mentioned items and stated, "I refuse."  I advised Inmate KASTLE that refusal to submit to a urinalysis would result in a CDC 115 for refusing.  Inmate KASTLE stated, "That's alright, I will take the 115."

Inmate KASTLE is a participant in the Mental Health Services Delivery System at the CCMS level of care.

Inmate KASTLE's TABE score is above 4.0.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ► S. Martinez, Correctional Officer | | 7/30/07 | B-Work Crew Ofcr. | S/S |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING N/A |
|---|---|---|---|
| | | 7-30-2007 | DATE ___ LOC. ___ |

| CLASSIFIED | OFFENSE DIVISION: | DATE: | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | | | | | | |
| ☒ SERIOUS | D | 7/30/07 | ► Schurzer | | ☐ HO | ☒ SHO | ☐ SC | ☐ F |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| B07-07-0036 | ► | 8/1/07 | 2000 | N/A |
| ☐ INCIDENT REPORT LOG NUMBER: N/A | BY: (STAFF'S SIGNATURE) ► | DATE | TIME | BY: (STAFF'S SIGNATURE) ► | DATE | TIME |

HEARING

**PLEA: NOT GUILTY**

**FINDINGS:** Inmate KASTLE was found Guilty of CCR §3290(d), specifically, "REFUSAL TO TEST FOR CONTROLLED SUBSTANCES", Division "D" Offense.  This finding is based on the preponderance of evidence presented at the hearing which does substantiate the charge.

**DISPOSITION:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of credits, consistent with a Division "D" Offense, per CCR §3323.  Inmate KASTLE was assessed 90 days Privilege Group "C", which shall commence on 08/05/07 and conclude on 11/02/07.  Privilege Group "C" includes: Limited yard per "C" Status, No telephone calls (except on emergency basis), No dayroom, No family visits, No special purchase or quarterly packages, ¼ maximum canteen draw.

**ADDITIONAL DISPOSITION:** Inmate KASTLE was counseled, warned and reprimanded.

**INMATE KASTLE IS REQUIRED TO SUBMIT TO MANDATORY RANDOM DRUG TESTING, PER CCR 3315(f)(4), FOR A PERIOD OF TWELVE (12) MONTHS.**

(CONTINUED ON RVR PART-C)

| REFERRED TO | ☐ CLASSIFICATION | ☐ BPT/NAEA | | | | |
|---|---|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | | SIGNATURE | | DATE | TIME |
| L. KESSLER, CORRECTIONAL LIEUTENANT (F-B) | | | ► | | 8/5/07 | 0819 |
| REVIEWED BY: (SIGNATURE) M. Nunez | | DATE 8/21/07 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ► E.B. JONES, C.D.O.  CDO | | DATE 8/29/07 | |
| RENKE, CAPTAIN (A) | | | | | | |
| CDC 115 GIVEN INMATE AFTER HEARING | | | BY: (STAFF'S SIGNATURE) ► | | DATE 9-7-07 | TIME 090 |

3)

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTION
PAGE 2 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-86598 | KASTLE | B07-07-0036 | S.V.S.P. | 08/05/07 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF:    ☐ 115 CIRCUMSTANCES    ☒ HEARING    ☐ IE REPORT    ☐ OTHER _____

**Hearing:** 08/05/07    **Time:** 0819 hrs    **Any Postponement Explained:** None

**Inmate's Health:**    Inmate KASTLE stated his health was good and is willing to proceed with the hearing. The circumstances have been read aloud in the presence of inmate KASTLE, who acknowledged his understanding of the charges

**MHSDS:** Inmate KASTLE **is** a participant in the Department's Mental Health Services Delivery System (MHSDS), at the CCCM level of care.

The circumstances of the RVR do not indicate that inmate KASTLE exhibited any bizarre behavior that would raise concerns about his mental health. Based on this and pursuant to recent changes approved by the U.S. Court on COLEMAN, a mental health assessment was not initiated. During the hearing, inmate KASTLE did not demonstrate any strange, bizarre or irrational behavior.

**Date of Discovery:** 07/25/07
**Initial RVR copy issued on:** 08/01/07
**Last document issued on:** 08/01/07
**Hearing started on:** 08/05/07
**D.A. postponed date:** None
**D.A. results issued date:** None

**Time Constraints:**    Time constraints were met. Inmate KASTLE was provided a copy of the CDCR Form 115 within 15 days after the discovery of information leading to the charge. The hearing was held within 30 days of the date the inmate was provided a copy of the CDCR Form 115.

**Staff Assistant (SA):** A Staff Assistant was not assigned per CCR §3315(d)(2).

Inmate KASTLE'S TABE Reading Score is above 4.0.

**Investigative Employee (IE):** An Investigative Employee was not assigned per CCR §3315(d)(1).

**D.A. Referral:** N/A

**Evidence Requested or Used:** There was no evidence requested or used.

**External/Outside Evidence:** None    **Video Tape Evidence:** None

**Inmate Plea and Statement:** Inmate KASTLE entered a plea of **NOT GUILTY** and made the following statement: "No, I have to deal with it on appeal."

(CONTINUED ON RVR PART-C)

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| R.A. KESSLER, CORRECTIONAL LIEUTENANT | 8/5/07 |

| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staffs Signature) | DATE SIGNED 9-1-07 | TIME SIGNED 0900 |
|---|---|---|---|

115-C (5/95)

OSP 99 25O

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE _3_ OF _4_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-86598 | KASILE | B07-07-0036 | S.V.S.P. | 08/05/07 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

The Senior Hearing Officer asked the following question(s) of the Subject:

Q-1: You were ordered to submit to a urine analysis by Correctional Officer Martinez?
A-1: Yes.

Q-2: Did you comply with this lawful order?
A-2: No.

**Witnesses Requested:** None. **Witness Testimony at Hearing:** None

**Confidential Information:** There was no confidential information used in this hearing.

**Findings:** Inmate KASILE is found **Guilty** of "REFUSAL TO TEST FOR CONTROLLED SUBSTANCES." This finding of **Guilty** is based upon the following preponderance of evidence:

**A:** The testimony of Correctional Officer S. Martinez, presented in the circumstances portion of the RVR which states in part: "....I was instructed by B-Yard Sergeant Jansen to conduct a urinalysis on inmate KASILE (P-86598), at the request of B-Yard medical staff Dr. Kirby. I had inmate KASILE report to B-Medical Health Annex. I handed inmate KASILE a pair of latex gloves and a urine specimen container and instructed inmate KASILE to give me a urine sample. Inmate KASILE handed me back the above mentioned items and stated, "I refuse." I advised inmate KASILE that refusal to submit to a urinalysis would result in a CDC-115 for refusing. Inmate KASILE stated, "That's alright, I'll take the 115."

**B:** The testimony of Dr. Kirby M.D., presented in the RVR Supplemental Report, which states in part: " On 07/25/07, at approximately 1130 hours, while assigned as Psychiatrist, I saw inmate KASILE (P-86598) for a priority ducated medication management appointment. During the appointment, I noted that he was agitated, anxious, slightly tremulous argumentative, defensive, slightly paranoid, demanding and not appropriately processing information. His eyes were glassy and his pupils were extremely dilated. I did not believe these symptoms were best accounted for by his current medication, though I reduced it over the next several weeks, as it appeared contraindicated. Following my appointment with him, I discussed his presentation with his regular clinician, Dr. Schneider, who concurred that his presentation was outside his normal baseline, and we both had agreed that a urine toxicity screen was appropriate. I suspected that these symptoms were better accounted for by substance abuse, consistent with amphetamine abuse, and ordered a stat urine toxicity screen. I was informed that inmate KASILE refused to provide a urine sample and this matter has been turned over to custody for appropriate action."

**Conclusion:** The Reporting Employee notes that he received instructions from Sergeant Jansen, per Dr. Kirby, to conduct a urine analysis on inmate KASILE, who did not cooperate and stated, "I refuse." The Supplemental Report authored by Dr Kirby M.D. notes that she met with inmate KASILE on 07/25/07 and suspected (believed) that the symptoms noted in the RVR Supplemental were not consistent with his prescribed medication. Dr. Kirby discussed the aforementioned with inmate KASILE'S regular clinician, Dr. Schneider, who concurred that inmate KASILE'S presentation was outside his normal baseline and that a toxicity screen was appropriate. Dr. Kirby states she suspected that the symptoms noted in the RVR Supplemental Report were better accounted for by substance abuse, consistent with amphetamine abuse.

(CONTINUED ON RVR PART-C)

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| R.A. KESSLER, CORRECTIONAL LIEUTENANT | | 8/5/07 |
| GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 9-1-07 | 0900 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

115-C (5/95)

OSP 99 2508

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 4 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-86598 | KASILE | B07-07-0036 | S.V.S.P. | 08/05/07 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER_____

Inmate KASILE pled not guilty to said charge, however he did not use the alloted time set aside for him to present the basis for his innocence. The Senior Hearing Officer admonished inmate KASILE for not complying to direct orders from staff. Inmate KASILE was advised that further violations of this nature will result in progressive disciplinary action.

**This finding is based on the preponderance of evidence at the hearing, which does substantiate the charge.**

**Enemy Concerns:** There are no enemy concerns related to this disciplinary report.

**Appeal Rights:** Inmate KASILE was advised of his rights to appeal per CCR §3084.1(a). Inmate KASILE was advised that he will receive a completed copy of the RVR upon final audit by the Chief Disciplinary Officer. Inmate KASILE was further advised of restoration of credit loss for a Division "D" Offense per CCR 3327.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| R.A. KESSLER, CORRECTIONAL LIEUTENANT | 8/5/07 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | 9-1-07 | 0900 |

C 115-C (5/95)

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE _1_ OF _1_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-86598 | KASTLE | B07-07-0036 | SVSP | 07/25/07 |

[x] SUPPLEMENTAL   [ ] CONTINUATION OF:   [ ] 115 CIRCUMSTANCES   [ ] HEARING   [ ] IE REPORT   [ ] OTHER_____

On 07/25/07, at approximately 1130 hours, while I was assigned as Psychiatrist, I saw Inmate KASTLE, P-86598, for a priority ducated medication management appointment. During the appointment, I noted that he was agitated, anxious, slightly tremulous, argumentative, defensive, slightly paranoid, demanding, and not appropriately processing information. His eyes were glassy and his pupils were extremely dilated. I did not believe these symptoms were best accounted for by his current medication, though I reduced it over the next several weeks, as it appeared contraindicated. Following my appointment with him, I discussed his presentation with his regular clinician, Dr. Schneider, who concurred that his presentation was outside his normal baseline, and we both had agreed that a urine toxicity screen was appropriate. I suspected that these symptoms were better accounted for by substance abuse, consistent with amphetamine abuse, and ordered a stat urine toxicity screen. I was informed that Inmate KASTLE refused to provide a urine sample and this matter has been turned over to custody for appropriate action.

Dr. Kirby, Psy.D M.D.

SIGNATURE OF WRITER

DATE SIGNED
7/31/07

[ ] COPY OF CDC 115-C GIVEN TO INMATE

GIVEN BY: (Staff's Signature)

DATE SIGNED
8/1/07

TIME SIGNED
2600

115-C (5/95)

OSP 99 250

STATE OF CALIFORNIA

# SERIOUS RULES VIOLATION REPORT

DEPARTMENT OF CORRECTION

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| | | CCR 3289(1) | 07/25/07 | SVSP | P07-07-0035 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT     ☐ YES    ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution.

INMATE'S SIGNATURE ► N/A     DATE

☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution.

INMATE'S SIGNATURE ► N/A     DATE

DATE NOTICE OF OUTCOME RECEIVED     DISPOSITION     N/A

☐ **I REVOKE** my request for postponement.

INMATE'S SIGNATURE ► N/A     DATE

## STAFF ASSISTANT

STAFF ASSISTANT

☐ REQUESTED     ☐ WAIVED BY INMATE

INMATE'S SIGNATURE ►     DATE

☐ ASSIGNED     DATE     NAME OF STAFF

☒ NOT ASSIGNED     REASON     DNMC 3315 d.2

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE

☐ REQUESTED     ☐ WAIVED BY INMATE

INMATE'S SIGNATURE ►     DATE

☐ ASSIGNED     DATE     NAME OF STAFF

☒ NOT ASSIGNED     REASON     DNMC 3315 d(1)

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE     ☐ STAFF ASSISTANT     ☐ INVESTIGATIVE EMPLOYEE     ☐ OTHER _____     ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| N/A | ☐ | ☐ | N/A | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenti the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

INVESTIGATOR'S SIGNATURE ►     DATE

☒ COPY OF CDC 115-A GIVEN INMATE     BY: (STAFF'S SIGNATURE) ►     TIME 2000     DATE 8/1/07

State of California        INMATE / PAROLEE APPEAL SCREENING FORM        Department of Corrections and Rehabilitation
CDCR-695

INMATE: _Kastle_____    CDC #: _P-86598_____    CDC HOUSING: _B5-102___

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR ONE OR MORE REASONS NOTED BELOW OR
RETURNED TO YOU TO ATTACH SUPPORTING DOCUMENTS.

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[ ] Duplicate Appeal; Same Issue
[ ] Inappropriate Statements
[ ] Time Constraints Not Met
[ ] Cannot Submit On Behalf Of another Inmate
[ ] Appealing Action Not Yet/Already Taken
[ ] May Submit One (1) Non-Emergency Appeal Per Week
[ ] Incomplete 602
[ ] Attempting to Change Original Appeal Issue
[ ] Not Authorized to Bypass Any Level
[✗] Numerous and separate issues

[ ] Limit of One Continuation Page May Be Attached
[ ] Action / Decision Not Taken By CDCR
[ ] DRB/BPH Decisions Are Not Appealable
[ ] No Significant Adverse Effect Demonstrated
[ ] Pointless Verbiage/Appeal is vague
[ ] Not A Request Form; Use CDCR-7362 – to access Medical
    Services, submit your request on a CDCR-Form 7362.
    If necessary, sign up for sick call.
[ ] Request for Interview; Not an Appeal
[ ] must attempt to resolve grievance informally
    through the informal appeals process

PLEASE FOLLOW INSTRUCTIONS AND RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS
Comments:   You may write on back of this form to clarify or respond to the above.

You have several issues in appeal.
#1 is to have an appeal, I never received, get
a log #. I can only process appeals after I
receive them. You have attached a copy of
an appeal, on white paper, w/ no original signature
that is now outside time constraints.
#2 is the RVR. to appeal an RVR, attach
a complete final copy : note due process
procedural errors on a 602

Eloy Medina, CC-II
Appeals Coordinator

Date: _9/18/07_

This screening action may not be appealed. If you allege the above reason is inaccurate, then attach an explanation
on a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.* Please
return this form to the Appeals Coordinator with the necessary information attached. (4/30/07)

*ATTACHMENT*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| 1. _____ | | 1. _____ | | *10* |
| 2. _____ | | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.   *Processing of Appeals*

| NAME Kastle, CHAD EDWARD | NUMBER P86598 | ASSIGNMENT 2nd Watch Building Porter | UNIT/ROOM NUMBER B5-102 |
|---|---|---|---|

A. Describe Problem: **☒** After an incident on July 25, 2007, I filed a 602 appeal form dated for August 02, 2007 (Exhibit A) through the institutional mail. After not receiving an Inmate Appeal Assignment Notice, as is usually sent to me describing the appeals designation and due date, I sent an Inmate request for interview (GA-22) to the Appeals Coordinator on August 19, 2007. After two more weeks of not hearing back from the Appeals Coordinator, on July 09, 2007 I filed A 602 appeal requesting the position of my August 02, 2007 appeal as well as requesting a LOG # for that 602 appeal and that an Assignment Notice

If you need more space, attach one additional sheet.    (CONTINUED ON ATTACHED SHEET)

B. Action Requested: To be granted a time extension and have my ~~original~~ original Aug. 2, 2007 filed at the formal level and given a LOG #.  Thank you.

Inmate/Parolee Signature: _____    DELIVERED SEP 21 2007    Date Submitted: 9/17/07

REC'D SEP 18 2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

RECEIVED
INMATE APPEALS BRANCH
MAR 10 2008

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

cc/ck

CONTINUED 602 APPEAL FOR SEPTEMBER 17, 2007

**Describe Problem:** be sent to me for that August 2nd appeal. On September 13, 007 I received my July 9th appeal back and a CDCR-695, Screening Form attached o the front of it. On the bottom of the screening form is stated that this DCR-695 form may not be appealed. From the face of the Screed-Out appeal and he face of the CDCR-695 form attached, it appears that the appeals coordinator ither does not understand the appeal, or did not read it at all. Regardless, he Appeals Coordinator, Eloy Medina, attached a printout of my updated appeals here there is no sign of my Xnt August 2, 2007 appeal ever reaching or being iled. (Exhibit B, September 5th, 2007 screened out appeal) Being that the ncident on which date of the August 2nd, 2007 appeal was filed (July 25, 2007) an now barred by 15 CCR §3084.6(c); from filing an appeal aginst medical staff r. Keren Kerby because the incidence occured on July 25, 2007 and my August 2nd, 007 appeal XXXXXXXXXX never reached the Appeals Coordinator. As stated in my riginal appeal of August 2, 2007, I am only filing this appeal to exhaust my lesser remedies so as this matter is not likely to be resolved at the Administ- rative Level, so I might bring this matter to the court.


ATTACHED: EX A Original August 2,2007  602 Appeal
          EX B Screened out 602 appeal for September 9, 2007

CHAD E. KASTLE, P86598                    DATED: September 17, 2007

State of California    INMATE / PAROLEE APPEAL SCREENING FORM    Department of Corrections and Rehabilitation
CDCR-695

INMATE: _Kastle_    CDC #: _P-86598_    CDC HOUSING: _BS-102_

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR ONE OR MORE REASONS NOTED BELOW OR
RETURNED TO YOU TO ATTACH SUPPORTING DOCUMENTS.

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[ ] Duplicate Appeal; Same Issue

[ ] Inappropriate Statements

[ ] Time Constraints Not Met

[ ] Cannot Submit On Behalf Of another Inmate

[ ] Appealing Action Not Yet/Already Taken

[ ] May Submit One (1) Non-Emergency Appeal Per Week

[ ] Incomplete 602

[ ] Attempting to Change Original Appeal Issue

[ ] Not Authorized to Bypass Any Level

[ ] Numerous and separate issues

[ ] Limit of One Continuation Page May Be Attached

[ ] Action / Decision Not Taken By CDCR

[ ] DRB/BPH Decisions Are Not Appealable

[ ] No Significant Adverse Effect Demonstrated

[ ] Pointless Verbiage/Appeal is vague

[ ] Not A Request Form; Use CDCR-7362 – to access Medical
Services, submit your request on a CDCR-Form 7362.
If necessary, sign up for sick call.

[X] Request for Interview; Not an Appeal

[ ] must attempt to resolve grievance informally
through the informal appeals process

PLEASE FOLLOW INSTRUCTIONS AND RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS
Comments:  You may write on back of this form to clarify or respond to the above.

_Send Request for Interview to_
_Medical._

_I have attached Appeal listing of_
_Formal appeals received by Appeals Office_

Eloy Medina, CC-II
Appeals Coordinator

DELIVERED SEP 1 3 2007
Date: _9/6/07_

This screening action may not be appealed. If you allege the above reason is inaccurate, then attach an explanation
on a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.* Please
return this form to the Appeals Coordinator with the necessary information attached. *(4/30/07)*


B5

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. _____ | 1. _____ | *10* |
| 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly. *processing of Appeals*

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| KASTLE, Chad Edward | P86598 | PTR.B B52W | B5-102 |

A. Describe Problem: On August 02, 2007, I filed a CDC 602 appeal agints medical staff. On August 19th, 2007, after not hearing from the appeals coordinator regarding my appeal, I sent a CDC GA-22 Inmate request for Interview to the appeals coordinator requesting information regarding the August 2nd appeal. To date I have heard nothing about any action requested of my appeal, or a response to my 08/19/2007 request for interview. I am sending a re-typed copy of the 08/19/2007 request for interview with this appeal.

                    -attached copy of 8-19-07, GA-22-

If you need more space, attach one additional sheet.

B. Action Requested: Provide me with the current position of my August 2nd appeal, provide me with a LOG # for that appeal, and forward me an, "Inmate Appeal Assignment Notice" for the August 2nd Appeal (CDC 602). Thank you.

Inmate/Parolee Signature: _____    RECD SEP 6 2007    Date Submitted: 09/05/2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____    DELIVERED SEP 13 2007    INMATE APPEALS BRANCH   MAR 10 2008   RECEIVED

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: DELIVERED SEP 21 2007

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim.    CDC Appeal Number:

GA-22

INMATE REQUEST FOR INTERVIEW

08/19/2007    Appeals Coordinator    Kastle    P86598

B5    204    porter, B52W    RDO: S/M

Coastline Community College Fall '07

I have not received an, "Inmate Appeal Assignment Notice" on two CDC-602 appeals I filed.
One was on August 02, 2007 and the other was on August 13, 2007. Please inform me as to the
proceedings of these Appeals. Thank you.

\* \* \* RESENDED CDCR-602 INMATE/PAROLEE APPEAL FORM \* \* \*

THIS IS AN ATTACHMENT TO THE CDCR-602 INMATE/PAROLEE APPEAL FORM

LOG # SVSP-B-08-00671 of August 02, 2007

ATTACHMENT

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region      Log No.      Category

1. _____      1. _____      _____

2. _____      2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME KASTLE, Chad E. | NUMBER P86598 | ASSIGNMENT Porter, Bldg. B5, 2nd Watch | UNIT/ROOM NUMBER B-5-102 L |
|---|---|---|---|

(17) ATTACHMENT # (1)

A. Describe Problem: On July 25, 2007 I was involved in an incioident with my psychiatrict to which was issued a RVR-115, LOG # B07-07-0036. (see attached RVR) On August 2, 2007 I completed and deposited a CDC-602 into the outgoing intradepartmental prison mail directed to the Appeals Coordinator. On August 19, 2007 after not hearing of the proceedings of the 602, I sent the Appeals Coordinator a CDC-GA-22 Inmate Request For Interview, regarding the 602. (see attached copy of Aug. 19 CDC-GA-22) OnSeptember 05, 2007 after hearing nothing about my CDC-602 and CDC-GA-22 I filed a completed Sebsequest CDC-602 in the outgoing intradepartmental mail, directed to the appeals coordinator. On Sept. 06, 2007 this appeal was Screened-Out,

If you need more space, attach one additional sheet.      —CONTINUED ON ATTACHED—      RECD FEB 07 2008

B. Action Requested: Assign Log Number to this Appeal. Grant request cited on Original Aug. 2, 2007 CDC-602, and fully expunge the July 25, 2007 RVR-115 LOG # B07-07-0036, and restore the 90 days of forefited credits lost to RVR-115 LOG # B07-07-0036. Restore EPRD to 07-11-2010.

////

Inmate/Parolee Signature: _____      Date Submitted: 02-07-2008

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

Received 02/08/2008      P86098

witnessed by medical cell b/y 2/8/08

Staff Signature: _____      Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

INMATE APPEALS BRANCH      RECEIVED MAR 10 2008

Signature: _____      Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

Carbon Copy Kept. 2-7-08 nd

CDC-602 Inmate/Parolee Appeal Form (Continued)

Kastle, Chad E., (P86598) B-5-102 L
February 07, 2008

A: Describe Problem (cont.)...because it was deemed to be an Inmate Request for interview and Not an Appeal. (see attached)  Being that I may not appeal the CDC-695 Screening attachment, I filed a third CDC-602. On Sept. 17, 2007 I completed and deposited a CDC-602 into the outgoing intradepartmental prison mail, directed to the inmate appeals coordinator. On Sept. 18, 2007 I received the appeal back as it was screened-out because it was deemed to contain too many or numerous issues.  After these four seperate attempts to exhaust my administrative appeal remedies persuant to the california case of In re Muscalski (1975) 52 Cal. App. 3d 500, 508, I deemed that the appeals process was inadequate as can be seen from the face of the actual appeal and the appeals coordinator's response.  On October 5, 2007 I filed a petition for Writ of Habeas Corpus in the MOnterey Co. Superior Court in the Matter of In re Chad Edward Kastle, No. HC5929, regarding this matter.  On December 03, 2007 the Hon. Strphen A. Sillman denied my Petition.  I filed a Motion to reconsiter the Petition.  On December 24, 2007 I filed a Petition for Writ of Habeas Corpus in the California Court of Appeals for the sixth Appellate Dist. in the matter of In re Chad Edward Kastle, Case No. H032422.  ON order is due on February 20, 2008.
The issue at-hand is whether I am entitled to a Laches-tolling with regard to an undue delay which may render the issue cause for prejudice against me under Brown vs. State Personnel Board (1985) 166 Cal. App. 3d. 1151.  Should I be granted tolling with regard to 15 CCR §3084.7(c) to have my Original August 2, 2007 CDC-602 appeal heard even though it is over six months beyond time constraints.  The Brown court agreed it does at Brown Supra,page 1159, "In civil actions the 'defence of laches requires unreasonable delay plus either acquiescence in the act about which the plaintiff complains or prejudice to the defendant resulting from the delay."  The duty to accept the "Late" appeal, because of no fault of plaintiff's , is required by the defendant or the Prison Appeals Coordinator at the CDCR, when the issue such as is at hand arises.

DATED: February 07, 2008             Respectfully Submitted,

                                     C.E.Kastle, P86598 (B5-102)
                                     Inmate, Pro se.

attached   :Aug 2, 2007 appeal
            Aug 19, 2007 request for interview
            Sept. 05, 2007 appeal
            Sept 17, 2007 appeal
            RVR-115 LOG # B07-07-0036

carbon copy retained by inmate, and sent to Plata et al receiver at P.O.Box 942883, Sacramento, CA 94283-0001.

## EXHIBIT B

| Page No. | Description of Document: |
|----------|--------------------------|
| 1-35 | Original Habeas Corpus in State Court |
| 36-37 | Superior Court's Denial |
| 38 | Appellate Court's Denial |
| 39 | California Supreme Court's Denial |

Chad Edward Kastle
CDCR # P-86598
Salinas Valley State Prison
31625 Highway 101, POB 1050
Soledad, CA 93960-1050

Pro se litigant,

FILED FEB 19 2008

By, FREDRICK K OHLRICH

Clerk of the Supreme Court

//seal//

IN THE CALIFORNIA SUPREME COURT

SAN FRANCISCO DIVISION

In re                          )        Case No S160873
                               )
                               )        6th App. # H032422, (12-24-07)
        CHAD EDWARD KASTLE     )
                               )        Monterey Co. # HC5929, (10-05-07)
                               )        PETITION FOR REVIEW
On Habeas Corpus.              )
                               )        Cal. Rules of Ct., Rule §28(a)
                               )

1)   This petition for writ of habeas corpus was denied
     by the Sixth Appellate District Court of Appeals
     on 01-29-2008 without comment, #H032422.

2)   This petition for writ of habeas corpus was denied
     by the Monterey County Superior Court of Calif. on
     12-03-2007, see Exhibit "G" of the attached petitio
     petition for reason for denial.

     I ask that this court review this petition for writ of
habeas corpus persuant to California Rules of Court, Rule §28(a).
DATED: 02-13-2008

                                   Respectfully Submitted,

                                   Chad E. Kastle, P86598
                                   Petitioner, In Pro Per.

MC–275

Name  Chad Edward Kastle

Address  31625 Highway 101, POB 1050

Soledad, CA 93960-1050

CDC or ID Number  P-86598

## CALIFORNIA COURT OF APPEALS

## SIXTH APPELLATE DISTRICT

(Court)

PETITION FOR WRIT OF HABEAS CORPUS

Chad Edward Kastle

Petitioner

vs.

Mike S. Evans (Warden) et al.,

Respondent

No. _____

(To be supplied by the Clerk of the Court)

Monterey Co. Superior Ct. No. HC5929

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

MC-275

**This petition concerns:**

| | | | |
|---|---|---|---|
| ☐ A conviction | | ☐ Parole | |
| ☐ A sentence | | ☒ Credits | |
| ☐ Jail or prison conditions | | ☒ Prison discipline | |
| ☐ Other *(specify):* | | | |

1. Your name:  Chad Edward Kastle

2. Where are you incarcerated?  Salinas Valley State Prison, Soledad, California

3. Why are you in custody?  ☒ Criminal Conviction  ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Residential Burglary; Receiving Stolen Property; and Prior Felony Enhancement.

   b. Penal or other code sections:  PC 459; PC 496; PC 667

   c. Name and location of sentencing or committing court:  Ventura County Superior Court, 800 S. Victoria Avenue, Ventura, California 93009

   d. Case number:  CR45410; CR38742

   e. Date convicted or committed:  May 26, 2000

   f. Date sentenced:  June 26, 2000

   g. Length of sentence: 14 years 4 months

   h. When do you expect to be released?  October 2010

   i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No. If yes, state the attorney's name and address:

      William Rutan, Ventura County Public Defenders Office

      800 S. Victoria Avenue; Ventura, California 93009

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty  ☒ Guilty  ☐ Nolo Contendere  ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

MC–275

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER WAS DENIED RIGHT OF PSYCHOTHERAPIST-PATIENT CONFIDENTIALITY
WHEN HIS PHYCHOTHERAPIST DISCLOSED PRIVILEGED INFORMATION TO CUSTODY
STAFF FOR THE PURPOSE OF OBTAINING A URINE SAMPLE WHICH PETITIONER THEN
REFUSED & INADVENTANTLY RECEIVED CREDIT FORFEITURE OF EARNED GOOD-TIME

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized By Calif. PC §1474)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized by Calif. PC §1474)

7. **Ground 2 or Ground  2  (if applicable):**                                    MC–275

PETITIONER'S PSYCHOTHERAPIST FAILED TO SECURE WRITTEN INFORMED CONSENT

BEFORE CHANGING HIS RELYING PSYCHOTROPIC MEDICATION

a. Supporting facts:

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized by Calif. PC §1474)

b. Supporting cases, rules, or other authority:

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized by Calif. PC §1474)

7. Ground 3 or Ground ___3___ (if applicable):

MC-275

ADMINISTRATIVE COORDINATOR FAILED TO PROCESS PETITIONER'S EXHAUSTIVE

APPEAL THUS DENYING PETITIONER TO DUE PROCESS UNDER THE LAW

a. Supporting facts:

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized by Calif. PC §1474)

b. Supporting cases, rules, or other authority:

(Please see Memorandum of Points and Authorities in Support of Petition)

(Authorized by Calif. PC §1474)

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

      _____

   b. Result _____ c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

          (2) _____

          (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

      _____

9. Did you seek review in the California Supreme Court? ☐ Yes ☐ No. If yes, give the following information:

   a. Result _____ b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

          (2) _____

          (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   N/A _____

   _____

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

      Administrative appeal (CDCR-602 Form) filed on August 2, 2007. This issue is a contention in this action.

      _____

      _____

      _____

      _____

      _____

      _____

   b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
      *Attach documents that show you have exhausted your administrative remedies.*

MC–275

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court of California, County of Monterey

   (2) Nature of proceeding (for example, "habeas corpus petition"): PC §1474 Habeas Corpus MC-275

   (3) Issues raised: (a) (1) Denied right to confidentiality

   (b) (2) Denied right to informed consent, (3) Denied right to exhaust administrative remedies.   Court's Denial

   (4) Result (Attach order or explain why unavailable):

   (5) Date of decision: December 3, 2007  (attached at exhibit) Case No. HC5929

   b. (1) Name of court: N/A

   (2) Nature of proceeding:

   (3) Issues raised: (a)

   (b)

   (4) Result (Attach order or explain why unavailable):

   (5) Date of decision:

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:


15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   No delay


16. Are you presently represented by counsel?  [ ] Yes.  [X] No. If yes, state the attorney's name and address, if known:


17. Do you have any petition, appeal, or other matter pending in any court?  [X] Yes.  [ ] No. If yes, explain:
   Kastle v. Evans (2007) Civ No. CV-07-04730-SGL (RC)
   United States District Court, Cenrtal District

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   Issues presented to the California Superior Court, Monerey County
   The Honorable Stephen A. Sillman.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: December 12, 2007          ▶ _____
                                              (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 2007]          PETITION FOR WRIT OF HABEAS CORPUS          Page 6 of 6

1  Chad Edward Kastle
   CDCR # P-86598
2  Salinas Valley State Prison
   Facility B, Bldg. 5-102
3  31625 Highway 101, POB 1050
   Soledad, CA 93960-1050

4  Pro se litigant,

5

6

7              CALIFORNIA COURT OF APPEALS

8                SIXTH APPELLATE DISTRICT

9

10 In re

11   CHAD EDWARD KASTLE                    Case No._____
              (Petitioner)

12

13           On Habeas Corpus              PETITION FOR WRIT OF HABEAS CORPUS
                                           AND ATTACHED MEMORANDUM OF POINTS
14                                         AND AUTHORITIES IN SUPPORT THEREOF
   MIKE S. EVANS, Warden; SVSP
15 et al.                                     Cal Penal Code §1474
              (Respondent).

16

17

18

19

20

21

22              ( C O V E R    P A G E )

23

24

25

26

27

28              //kastle on habeas corpus//

## T A B L E   O F   C O N T E N T S

TITLE                                                              PAGE NO.

Table of Authorities..........................................ii, iii

Petition........................................................1

Introduction....................................................1

Parties.........................................................3

Statement of Facts..............................................4

Contentions.....................................................11

Prayer for Relief...............................................12

Verification....................................................12

Memorandum of Points and Authorities...........................13

    I      PETITIONER WAS DENIED THE RIGHT TO A PSYCHOTHERAPIST
         AND PATIENT RELATIONSHIP UNDER THE LAW...................14

         Argument................................................14

         Conclusion..............................................16

    II     PETITIONER'S PSYCHOTHERAPIST FAILED TO SECURE INFORMED
         CONSENT PRIOR TO CHANGING PETITIONER'S RELYING PSYCHIATRIC
         MEDICATION VIOLATING STATE LAW..........................18

         Argument................................................18

         Conclusion..............................................19

    III   ADMINISTRATIVE COORDINATOR FAILED TO PROPERLY PROCESS
         PETITIONER'S EXHAUSTIVE APPEAL DENYING PETITIONER DUE PROCESS..20

         Argument................................................20

         Conclusion..............................................22

Verification....................................................23

Exhibit (A).....................................................24

Exhibit (B).....................................................25

Exhibit (C).....................................................26

Exhibit (D).....................................................27

Exhibit (E).....................................................28

Exhibit (F).....................................................29

Exhibit (G).....................................................30

Exhibit (H).....................................................31

Motion to proceed In Forma Pauperis............................32

Motion for Appoingment of Counsel..............................34

[Proposed] Order to Show Cause.................................36

Proof of Service...............................................38

# T A B L E   O F   A U T H O R I T I E S

CITING                                                                    PAGE NO.

Chance v Armstrong (1998) 143 F3d 698.......................11, 17, 18

Coleman v Wilson (1995) 912 F Supp 1282....................17

Ewing v Goldstein (2004).................................16

Glendale City Employees Association, Inc v City of
Glendale (1975) 15 Cal 3d 328............................21

In re Dexter (1979) 25 Cal 3d 921........................21

In re Muszalski (1975) 52 Cal App 500.............11, 13, 20, 21

In re Strick (1983) 148 Cap App 3d 906..................21

Kelly v Small (9th Cir 2003) 31 F3d 1063................21

Keyhea v Rushing (1986) 178 Cal App 526................13, 19

Nielsen v Superior Court (1997) 55 Cal App 4th 1150........15

Olivera v Giurbino (9th Cir 2003) 371 F3d 569............21

Ogo Associates v City of Torrance (1974) 37 Cal App 830.....21

Parratt v Taylor (1981) 101 S Ct 1908...................14

People v Delgado (1989) 262 Cal 3d 122..................11, 13, 18

Peterson v Lampert (9th Cir 2002) 277 F3d 1073..........11, 20, 21

Preiser v Rodriguez (1973) 311 US 475..................22

Rhines v Weber (2005) 125 S Ct 1528....................21

Rudnick v Superior Court (1974) 11 Cal 3d 924...........11

United States v Hayes (2000) 227 F3d 578................11

Waldrop v Evans (11th Cir 1989) 871 F2d 1030...........17

White v California (1987) 195 Cal App 3d 452...........21

Williams v Vincent (2nd Cir 1974) 508 F2d 541..........17

FEDERAL CONSTITUTION:

        5th Amendment......................................11, 20

        8th Amendment......................................11, 14, 18

        14th Amendment.....................................11, 14

STATE CONSTITUTION:

        Article I, Section § 7.............................11, 13, 18

        Article I, Section § 29............................11, 13, 18

# T A B L E   O F   A U T H O R I T I E S

**STATE REGULATION**                                                    PAGE NO.

15 C.C.R. § 3084.4...........................................6

15 C.C.R. § 3290.............................................1

15 C.C.R. § 3315.............................................4

15 C.C.R. § 3327.............................................4

15 C.C.R. § 3361...........................................11, 13, 14, 1

**CALIFORNIA STATUTE:**

CALIFORNIA CIVIL CODE,

Section § 56.10..........................................11, 14, 17

Section § 2016...........................................11, 14

Section § 2031...........................................11, 14

CALIFORNIA EVIDENCE CODE,

Section § 1012...........................................11, 13, 14

Section § 1014...........................................11, 13, 14, 1

Section § 1024...........................................16

CALIFORNIA GOVERNMENT CODE,

Section § 810............................................10

CALIFORNIA WALFARE AND INSTITUTIONS CODE,

Section § 5326...........................................11, 14, 17, 1
                                                          19
Section § 5326.4.........................................11, 18, 19

Section § 5328...........................................11, 14, 17

CALIFORNIA PENAL CODE

Section § 1474...........................................1, 32

Section § 1524...........................................11, 14

Section § 1543...........................................11, 14.

Section § 3521...........................................11, 14, 19

Section § 5050...........................................3

CALIFORNIA RULES OF COURT,

Rule § 4.551.............................................34

OTHER CITINGS,

Black's Law Dictionary, 3d...............................17

Diagnostic Statistics Manual, 4th (DSM-IV)...............5

- iii -

1   Chad Edward Kastle
    CDCR # P-86598
2   Salinas Valley State Prison
    Facility B, Bldg. 5-102
3   31625 Highway 101, POB 1050
    Soledad CA 93960-1050
4   **Pro se litigant,**

5

6

7                       CALIFORNIA COURT OF APPEALS

8                        SIXTH APPELLATE DISTRICT

9

10  In re

11  CHAD EDWARD KASTLE
                    (Petitioner)                Case No. _____

12

13       On Habeas Corpus

14                                         PETITION FOR WRIT OF HABEAS CORPUS
                                           AND ATTACHED MEMORANDUM OF POINTS
15  MIKE S. EVANS, Warden; SVSP            AND AUTHORITIES IN SUPPORT THEREOF
    et al.
16                  (Respondent).          **Cal Penal Code §1474**

17

18                                 I

19                          INTRODUCTION

20

21        1      Petitioner **KASTLE**, CDCR # P-86598, was found

22  guilty of violating Title 15 of the California Code of

23  Regulations, Section 3290, Subd (d), during a Prison

24  Disciplinary Hearing, Prison Log No. B07-07-3600 0036, for refusing

25  to submit to urinalysis requested by Custody Officer, S.

26  Martinez on July 24, 2007.  (see Exhibit A)

27        2       Petitioner contends that the information leading

28  Custody Staff to request this test, was erroneously given by

                        //kastle on habeas corpus//

                            - 1 -

1  Petitioner's psychotherapist, Dr. Karen Kirby, Medical License

2  No. G67502 (Respondent), when she disclosed confidential,

3  privileged information obtained during a treatment session

4  between Respondent Kirby MD, Respondent Cahalan and Petitioner

5  Kastle.  (see Exhibit A & C)

6      3    Petitioner refused to submit to this test because

7  he believed this act to be an illegal breach of earlier

8  discussions held in a private, closed psychological session

9  between Responent Kirby, Respondent Cahalan and and Himself,

10 thus did not warrant such action under the law.  (see Exhibit A

11 and C)

12     4    Respondent Kirby again violated Petitioner's

13 legal rights when she denied Petitioner any right to refuse her

14 to change his relying, psychotropic medication, without first

15 obtaining Petitioner's written Informed-Consent required by law.

16 Petitioner will show through -prima facie- evidence that

17 Respondent Violated her own regulations, requiring that she

18 specifically secure written Informed-Consent, prior to changing

19 a psychotic persons relying medication.  (see, Exhibit C & E)

20     5    Leastly, during the course of Petitioner's

21 attempt to exhaust his Administrative remedies, so as he might

22 bring relief sought, through the Court system; The appeals

23 Coordinator, Mr. Eloy Medina, failed to file Petitioner's

24 exhaustive appeal, and blatantly disregarded Petitioner's

25 request for-outcome-of-pending-appeal, thus denying Petitioner

26 Due Process of Law.  (see, Exhibit B)

27 ///

28 ///

II

PARTIES

6       Petitioner Chad Edward Kastle, CDCR # P-86598 is a prisoner of the State of California currently incarcerated at Salinas Valley State Prison, Monterey County.

7       Respondent Dr. Karen Y. Kirby MD Lic No. G67502, is a psychotherapist with a degree in neurology, currently employed by the State of California, at Salinas Valley State Prison.

8       Respondent E. Cahalan, is a Licensed Psychiatric Technician (LPT) Lic No. 33043, currently employed by the State of California, at Salinas Valley State prison.

9       Respondent M. Schneider, is a Board Certified Psychologist, currently employed by the State of California, at Salinas Valley State Prison.

10      Respondent Mike S. Evans in currently employed as Facility Warden at Salinas Valley State Prion, and as such is the legal custodian of Petitioner.

11      Respondent James E. Tilton, is currently employed as Secretary for the California Department of Corrections and Rehabilitation, and as such is responsible for the lawful operation of all of its institutions, including Salinas Valley State Prison, persuant to Cal Penal Code §5050.

12      Respondent Edmund G. Brown Jr., is currently employed as California Attorney General, and as such represents the People of the State of California.

/ / /

//kastle on habeas corpus

- 3 -

III

STATEMENT OF FACTS

13      Concluding Petitioner's disciplinary hearing of August 05, 2007, Correctional Lieutenant R.A. Kessler, after a finding of "guilty" of said violation, then assessed Petitioner ninety (90) days forfeiture of good-time credits, ninety (90) days in disciplinary group "C", limited yard privilege, **no** phone privileges, no dayroom privileges, loss of visiting privileges, loss of book purchasing privileges, and placed in disciplinary canteen group. (see, Exhibit A)

14      In addition to the above, Petitioner is required to conform, and submit to vigorous chemical testing for a period of one year persuant to 15 CCR §3315(f)(4). Petitioner is now procedurally barred from applying for a restoration of earned good-time credits persuant to 15 CCR §3327(a)(4). (see, Exhibit A)

15      During a priority ducated psychiatric medication management appointment, Petitioner met with his psychotherapist for the sole purpose of renewing his relying psychotropic medication, a redundantly, affirmitive task (8 years **of** same medication). During the course of the appointment, Respondent Kirby contended that Petitioner seemed to be acting, "...in a manner that was consistent with amphetamine abuse." (see, Exhibit A & C)

16      Petitioner is currently under the direct care of his treating Psychologist, Dr. M. Schneider, who has been his sole case manager, consistently for over two years, treating

//kastle on habeas corpus//

- 4 -

1  Petitioner for various mental health disorders including,

2  Bipolar disorder, type mixed, while incarcerated at Salinas

3  Valley State Prison.  (see, Exhibit D)

4      17      Being that Petitioner does suffer from the ...

5  discussed illness, the symptoms described in Respondent Kirby's

6  disciplinary report to Staff Sergeant Jansen (see, Exhibit A,

7  Exhibit page 5, RVR Reports), that of Petitioner acting in a

8  manner, "consistent with **amphetamine abuse**" were that of the

9  normal, promonant symptom for that of a person experiencing a,

10 "Bipolar-episode" within the meaning of the current judicially

11 recognized DSM-IV (Diagnostic & Statistical Manual, 4d) and

12 could not have been unapparent to Respondent Kirby (a State

13 rubberstamp) and her Psychiatric Technician on the day of the

14 July 25, 2007 incident.

15 (see, Exhibit A, and DSM-IV)

16     18      Petitioner's prior treating psychotherapist to

17 Respondent Kirby, Dr. Eva MD saw Petitioner on five seperate

18 occations, approximately thirty (30) days consecutively, would

19 secure Petitioner's written "Informed-consent" at **every**

20 medication management session that Dr. Eva conducted on

21 Petitioner, without fail.  Dr. Eva did this repetitive process

22 any time he treats a psychotropically reliant patient,

23 regardless of wheather Dr. Eva changed a patients medication or

24 mearly adjusting the dosage of subsequest medication.

25 (see, Exhibit E, Dr. Eva's Psychiatric notes of Petitioner)

26     19      If Respondent Kirby had even mearley "scanned"

27 Petitioner's available mental health records, previous to

28 Petitioner's arrival, she would have understood that Petitioner

//kastle on habeas corpus//

1    had been reliant, and successful (for over eight years) on his

2    current medication regiment, and has continued to be so

3    throughout his entire adult life.  (see, Exhibit F)

4        20      Shortly after the July 25th incident, on August

5    2nd, Petitioner filed a timely Administrative Appeal (hereafter

6    known as CDCR-602-appeal) to the Appeals Coordinator,

7    Correctional Counseler Eloy Medina, as Petitioner is required

8    by statute to exhaust any available administrative remedies

9    prior to bringing any action in State Court.

10   (see, Exhibit B, Exhibit page(s) 5-9)

11       21      On August 07, 2007 Petitioner submitted to the

12   Medical Records Department, a GA-22 form ("Inmate Request For

13   Interview") attached to a CDC-193 form ("Trust Account

14   Withdrawal Order") for the purpose of obtaining a "Complete

15   Copy" of Petitioner's Mental Health File, describing the July

16   25th incident.  Note that Petitioner knew he could not request

17   this material through the CDC-602-appeal process because an

18   inmate may only submit one (1) CDC-602-appeal per seven day

19   interval.according to 15 CCR §3084.4(a); Petitioner had filed

20   his Exhaustive CDCR-602-appeal only five days ago, and was

21   barred from using the appeal process at that time.  Medical

22   Records did not comply with his August 7th request, thus

23   Petitioner, after seven-working-days had passed, submitted a

24   CDCR-602-appeal directing that Medical Records provide him, in

25   toto, with a copy of his mental health file.  Petitioner

26   attached copies of the August 7th, GA-22 and CDC-193 forms to

27   the CDCR-602-appeal as exhibits of sorts, giving the Appeals

28   Coordinator evidence of a prior attempt to retrieve said

//kastle on habeas corpus//

- 6 -

1  records before iniating the appeals process.  This CDCR-602

2  was returned to Petitioner sometime after August 24, 2007 as

3  it was never given a date-stamp, only a log No. of MAO-07-2120

4  at the bottom left corner of this August 13, 2007 CDCR-602.

5  (see, Exhibit B, Exhibit page 16, 17, and 18)

6        22      On August 19, 2007, after not hearing of the

7  proceedings of his original CDCR-602 of August 2, 2007, and

8  his subsequent August 13, 2007 CDCR-602, Petitioner then filed

9  a GA-22 ("Inmate Request For Interview") to further inquire of

10 the proceedings of his two appeals, (1) 8/2/07 "Exhaustive"

11 Appeal, and (2) 8/13/07 "Records" appeal, a copy of this GA-22 form was

12 included as Exhibit B, Exhibit page 13 in his Habeas Corpus

13 previously filed by the Monterey County Superior Court, Case

14 No. HC5929, and is again supplied at Exhibit B, Exhibit page 13

15 of this petition.  Please note that The Honorable Stephan A.

16 Sillman of the Monterey County Superior Court denied KASTLE's

17 petition (on December 3, 2007) in part because, "Petitioner has

18 not submitted a copy of this request" (refering to the GA-22 of

19 August 19th).  Petitioner in fact included this document in the

20 original petition, therefore the Courts reasoning for the

21 December 3rd denial of the petition, fails.  (see, Exhibit G)

22       23   ·   After Appeals Coordinator again failed to respond

23 to August 19th GA-22, Petitioner, on September 5th, 17 days

24 later, submitted a subsequant CDCR-602 Appeal to the Appeals

25 Coordinator.  This is the very first document to receive a

26 date-stamps (of September 6, 2007) by the Coordinator.  Within

27 this CDCR-602, Petitioner again inquires as to the proceedings

28 of both his August 2nd CDCR-602 and August 19th GA-22.

//kastle on habeas corpus//

- 7 -

1  The Appeals Coordinator, Mr Eloy Medina, CC II, thus responded
2  to the August 5th CDCR-602, by attaching a CDCR-695 ("Inmate/
3  Parolee Appeal Screening From") to the front of the Appeal,
4  stating that this issue is "Not an Appeal" and that Petitioner
5  should send any request for interview forms to medical.  As
6  well, Mr. Eloy Medina attached a listing of "Formal Appeals"
7  that Petitioner had filed for the past several years.  Note
8  that the Prison does not record any appeals submitted to their
9  department at the "Informal level" (AKA the first-level),
10  and if the Coordinator had only read the addressing appeal,
11  he would have known this to be an Informal-appeal, not required
12  to be either recorded on the "Inmate/Parolee Appeals Tracking
13  System form", or normally given a LOG number.  Mr. Medina,
14  therefore did know that Petitioner's August 2nd CDCR-602 would
15  not have shown up on the Tracking form.
16  (see, Exhibit B, page 1 et seq.)

17      24      Petitioner was bound by the face of the attached
18  CDCR-695 from appealing the Appeal Cordinator's perfunctory
19  response, thus Petitioner filed a third subsequent CDCR-602 to
20  resolve the whereabouts of his appeals and, "informal requests"
21  in addition to requesting an extension of time to re-file the
22  August 2nd CDCR-602, as this appeal was now time-barred and
23  outside any time-constraints in accordence with 15 CCR §3094.7,
24  subd (c).  The prior copies of both the August 2nd CDCR-602,
25  the August 19th GA-22, as well as the September 5th CDCR-602
26  with the attached CDCR-695 "Screening form" were thus submitted
27  as "attachment" to this final CDCR-602 dated September 17th.
28      25      In the final CDCR-602 dated Sept. 17th,
                    //kastle on habeas corpus//

- 8 -

1   Petitioner's claims were met with another CDCR-695 "Screening

2   Form", again barring Petitioner from any further attempts to

3   exhaust available administrative remedies.

4   (see, Exhibit B, Exhibit page 1 et seq.)

5       26      The lack of due diligence on the part of

6   Respondent Kirby for mistaking Petitioner's **NORMAL PROMONENT**

7   **SYMPTOM** for that of a person having been abusing illegal

8   amphetamines;  the negligence on the part of Respondent's Kirby

9   and her Certified Technician, Ms. E. Cahalan for failing to

10  review Petitioner's psychiatric file, prior to their scheduled

11  appointment; by Dr. Kirby violating the law, thus disclosing

12  privileged, confidential information to persons not lawfully

13  able to receive or hold such privilege, for the purpose of

14  confronting Petitioner for an "Unwarranted search/procedure",

15  thus shows that Respondent Kirby was acting contrary to a

16  professional physician, holding a personal position only to

17  endanger her patient.

18      27      The lack of due diligence on the part of the

19  Administrative Coordinator, Mr. Eloy Medina, CC II, for failing

20  to properly address and process all incoming appeals persuant

21  to a set, procedure, thus denying Petitioner due process to

22  exhaust his administrative remedies, according to law, further

23  allocates misconduct on the part of this Department.

24      28      Petitioner has previously sought grant of this

25  petition in the Superior Court of California, County of Monterey

26  and was subsequently denied on December 3rd, 2007 Case No.HC5929

27  by the Honorable Stephan A. Sillman.

28  ///

//kastle on habeas corpus//

- 9 -

29    Petitioner has further been able to exhaust his administrative remedies by way of the California Tort Claims Act, persuant to Cal Gov Code §810 et seq.  Petitioner's claim was filed sixty (60) days from the subsequent July 25th incident and was addressed by the Claims Board on November 13, 2007, as well is due to be further reviewed by the VCGCB (Board) at a December 13, 2007 hearing.  (see Exhibit H)

30    The Board concludes that the relief sought in Petitioner's Claim, would be best handled by the court system. (see, Exhibit H, Exhibit page 4)

31    The Respondent Mr. Eloy Medina was ommitted from the PARTIES sections of this petition, and should be incorporated, supra, as being employed as Administrative Coordinator, employed by the State of California at Salinas Valley State Prison.

///
///
///
///
///
///
///
///
///
///
///
///
///

//kastle on habeas corpus//

- 10 -

IV

## CONTENTS

1.

PETITIONER WAS DENIED THE RIGHT OF PSYCHOTHERAPIST-PATIENT
CONFIDENTIALITY UNDER; CAL EVID CODE §1012 AND §1014
CAL CIVIL CODE §56.10, §2016 AND §2031; CAL PENAL CODE §1524,
AND §1543; CAL W & I CODE §5328 AS WELL AS 15 CCR §3361;
RUDNICK V. SUPERIOR COURT (1974) 11 CAL 3D 924;
US V. HAYES (2000) 227 F 3D 578;
AND THE UNITED STATES 8TH AND 14TH AMENDMENTS OF
THE CONSTITUTION

2.

PETITIONER'S PSYCHOTHERAPIST FAILED TO SECURE WRITTEN INFORMED
CONSENT PRIOR TO CHANGING PETITIONER'S RELYING PSYCHOTROPIC
MEDICATION AGAINST PETITIONER'S DEMISE
THUS VIOLATING CAL W & I CODE §5326 ET SEQ; CAL PENAL CODE §3521;
PEOPLE V. DELGADO (1989) 262 CAL RPTR 122;
CHANCE V. ARMSTRONG (1998) 143 F 3D 698;
CAL CONST, ART I, §§7, 29;
AND THE UNITED STATES 8TH AMENDMENT OF THE CONSTITUTION

3.

PRISON ADMINISTRATIVE COORDINATOR FAILED TO PROCESS
PETITIONER'S EXHAUSTIVE APPEAL THUS DENYING PETITIONER
DUE PROCESS UNDER THE LAW
THUS VIOLATING THE COURT'S ORDER OF, IN RE MUSZALSHI
(1975) 51 CAL APP 500;
PETERSON V. LAMPERT (9TH CIR 2002) 277 F 3D 1073;
AND THE UNITED STATES 5TH AND 14TH AMENDMENTS OF
THE CONSTITUTION

///
///
///
///
///
///
///

//kastle on habeas corpus//

- 11 -

v

## PRAYER FOR RELIEF

Petitioner is without remedy save for Habeas Corpus. Accordingly, Petitioner requests that this Court:

1    Issue this Writ of Habeas Corpus

2    Issue an ORDER TO SHOW CAUSE

3    Issue an ORDER directing the California Department of Corrections and Rehabilitation to EXPUNGE Petitioner's July.25, 2007 RVR-LOG #B07-07-0036, and restore Petitioner's ninty (90) forfeiture of earned good-time credits, thus restoring Petitioner's Release date of July 11th, 2010.

4    Grant any and all other relief found necessary or appropriate in this matter.

## VERIFICATION/DECLARATION

I, CHAD EDWARD KASTLE, CDCR # P-86598 declare:

I am the Petitioner in this action. I have read the foregoing petition and the facts stated herein are true of my own knowledge, except as to matters that are stated therein, on my information and belief; and as to those matters I believe them to be true.

I declare under penalty of perjury of the laws of the state of California that the foregoing is true and correct; this Verification/Declaration was executed at Soledad, California on this 12th day of December , 2007.

Respectfully Submitted,

Chad E. Kastle, #P-86598
Petitioner, In Pro se.

//kastle on habeas corpus//

- 12 -

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN SUPPORT OF THE PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

1      California Inmates enjoy the right of privilege allocated them within the "Psychotherapist-Patient" statute at California Evidence Code, Sections §1012 and §1014.

2      California Inmates, as well, enjoy the security of knowing that they may speek freely when disclosing any personal, private matters to their therapist, in closed conversation in accordence with Title 15 of the California Code of Regulations under **Mental Health Services** Subchapter IV, Article 9, Section §3361, subd. (c).

3      Inmates enjoy the right to refuse any psychological medication in this State under <u>Keyhea V. Rushing</u> (1986) 178 Cal App 3d 526, as well inmates are allotted the right to give **Written Informed-Consent** <u>prior</u> to any Medical Doctor changing a reliant patients medication under California Penal Code, Section §3521 et seq., as well as cited in the California Case of <u>People V. Delgado</u> (1989) 262 Cal Rptr 122.

4      Petitioner must duly exhaust any and all administrative remedies available prior to initiating any action in the Courts. (e.g. Petition  for Writ of Habeas Corpus) (see, <u>In re Muszalski</u> (1975) 52 Cal App 500)

5      When Administrative Coordinator Mr. Eloy Medina failed to process Petitioner's Exhaustive Appeal(s), the Respondent did violate Petitioner's right to Due Process under the California Constitution, Article I, Section(s) §7 and §29.

//kastle on habeas corpus//

9        It is quite clear from Respondent Kirby's supplemental report to Sergeant Jansen on July 25, 2007 (see, supplemental RVR report at Exhibit A, Ex. p. 5) that the psychotherapist, Respondent Kirby, in this case did disclose, "information obtained by an examination of the patient.", to an unauthorized third person (Sergeant Jansen) for which Petitioner was then disciplined.

10        California Regulation regarding mentally ill inmates under Title 15 C.C.R. §3361(c) gives:

> "Recognizing that mental health care often involves revealing deeply personal and private matters, all mental health care shall be provided in such a manner as to maintain the dignity of the inmate. Professional relationships shall to conducted with proper privacy, with due regard for the professional to take necessary and appropriate action to prevent harm to the patient or to others. Records of Mental Health diagnosis, evaluation and treatment prepared or maintained by the department shall remain the property of the department and are subject to all applicable laws governing their confidentiallity and disclosure. Treatment will be accord with sound Principals of practice and will not serve a punitive purpose."

11        Indeed Petitioner, in this case, was subjected to punitive measures because of this unwarranted disclosure.

12        Under California Evidence Code, Section §1014 and cited in Nielsen V. Superior Court (1997) 55 Cal App 4th 1150, provides that:

> "...the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist. Confidential communications are protected to encourage those who may pose a threat to themselves or to others, because of some mental or emotional disterbance, to seek professional assistence. The privilege reflects a patient's constitutional right to privacy and is broadly construed in favor of the patient. The psychotherapist-client privilege is broader than other privileges. Unlike the physician-patient privilege for example, the psychotherapist-patient privilege can be invoked in a criminal proceding."

//kastle on habeas corpus//

- 15 -

1      13      Under California Evidence Code, Section §1024 and

2  cited in the California case of Ewing v. Goldstein (2004) 120

3  Cal App 4th 807, the Court is very clear that:

4      "...[there] is no privilege if the patient is in a mental or
       emotional condition as to be a danger to himself or to the
5      person or property of another and that [such] disclosure of
       communication is necessary to prevent the threat of danger."
6

7      14      The Respondent makes it clear to Sergeant

8  Jansen in the RVR report (Exhibit A, Ex. p. 5) as to the

   [demeanor] of Petitioner during their private, closed session,
9
   stating in her disciplinary report that, Petitioner was,
10
   "agitated, anxious, slightly tremulus, argumentitive, defensive,
11
   slightly paranoid, demanding and not properly processing
12
   information."
13
       15      Respondent's Kirby or Cahalan (Kirby's Tech)
14
   never associated any threat of danger in either of their reports
15
   of Petitioner's behaviour.  Respondent Kirby didnt summons any
16
   Correctional Staff to repremand Petitioner (as would normally
17
   have been done if an inmate was "acting-out"), but instead sent
18
   Petitioner back to yard without doubt of any "danger" of
19
   Petitioner harming himself or others.
20
       16      At page 820 of Ewing, supra, the Court concludes
21
   that"
22
       "Even is a threat of violence is communicated to a psychother-
23     apist, a duty to 'warn' arises only, [if] the information
       communicated to the therapist leads the therapist to believe
24     his or her patient posses a serious risk of, grave bodily
       injury to another.'"  (emphasis added)
25

26                          CONCLUSION

27     17      Why Respondent did not follow her own procedure

28  thus ordering a toxicology of Petitioner through medical Staff,

thus protecting Petitioner's privilege, but instead, used

**"Deliberate Indifference"** (Defined in Black's Law Dictionary as

"The careful preservation of one's ignorance despite awareness

of circumstances that would put a reasonable person on notice

of a fact essential to a crime.") as cited under <u>Colemen V.</u>

<u>Wilson</u> (1995) 912 F Supp 1282 @ 1316, Respondent Kirby and

Cahalan instead took the haphazard route and requested that

**Custody Staff (not Medical Staff)** secure this test of Petitioner

knowing full well this matter would in fact put the Petitioner

in danger of being disciplined by custody staff.

18      Cited under <u>Chance V. Armstrong</u> (1998) 143 F3d

698, "In certain instances, a physician may be deliberately

indifferent if he or she consciously chooses, 'an easier and

less efficaious' treatment plan." (Id. at p. 703-704)

(see also <u>Williams V. Vincent</u> (2nd Cir. 1974) 508 F2d 541, 544;

<u>waldrop V. Evans</u> (11th Cir 1989) 871 F2d 1030, 1035 (reaffirming

the position that "choice of an eaiser but less efficacious

course of treatment can constitute Deliberate Indifference"))

19      Respondent had absoutly no authority to disclose

privileged medical information to custody staff under California

Civil Code, Section §56.10, nor was it the intent of the

legislature to warrant such action under the California

Walfare and Institutions Code, Section §5328.

20      Petitioner thus requests this Court issue an

Order directing the California Department of Corrections and

Rehabilitation to restore Petitioner's lost, earned good-time

credits, atributable to "tainted Information" given for the

reasoning of said test.

//kastle on habeas corpus//

- 17 -

6          Petitioner had thus been punished illegally for relying on what little right he still had.  Responsible parties are continuing to act **Under Color of State Law** (Parratt V. Taylor (1981) 101 S Ct 1908, 1913) while continuing to be employed by the State of California at Salinas Valley State Prison.

### CONTENTION

### 1

PETITIONER WAS DENIED THE RIGHT OF PSYCHOTHERAPIST-PATIENT
CONFIDENTIALITY UNDER; CAL EVID CODE §1012 AND §1014;
CAL CIVIL CODE §56.10, §2016 AND §2031; CAL PENAL CODE
§1524 AND §1543; CAL W & I CODE §5328; AS WELL AS UNDER
15 CCR §3361; RUDNICK V. SUPERIOR COURT (1974) 11 CAL 3D 924;
UNITED STATES V. HAYES (2000) 227 F3D 578;
AND THE UNITED STATES 8TH AND 14TH AMENDMENTS OF THE
CONSTITUTION

### ARGUMENT

7          California prisoners have the right to not only hold, but to refuse to have discloed a privilege gained during the course of a Psychotherapist-Patient relationship.

8          The California Evidence Code, at Section 1012 thus holds that:

> "...confidential communication between a patient and their psychotherapist means information, including information obtained by an examination of the patient, trasmitted between a patient and their psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the intrest of the patient in the consultion, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and in the course of that relationship."

///

//kastle on habeas corpus//

- 14 -

CONTENTION

2

PETITIONER'S RELYING PSYCHOTHERAPIST FAILED TO SECURE
WRITTEN INFORMED CONSENT PRIOR TO CHANGING PETITIONER'S
PSYCHOTROPIC MEDICATION AGAINST PETITIONER'S DEMISE
THUS VIOLATING CAL W & I CODE §5326 ET SEQ; CAL PENAL
CODE §3521; PEOPLE V. DELGADO (1989) 262 CAL RPTR 122;
CHANCE V. ARMSTRONG (1998) 143 F3D 698;
CAL CONST. ART I, §7 AND §29;
AS WELL AS UNDER THE UNITED STATES CONSTITUTIONAL
8TH AMENDMENT

ARGUMENT

21      During the course of Petitioner's scheduled
medication management appointment with Respondent Kirby and
Respondent Cahalan, Petitioner declined to give consent to
Respondent Kirby so that she might change Petitioner's
medication to that of a level Petitioner knew would cause a
drastic increase in the degree of his manic, psychotic
episodes.  (see, Exhibit B, Ex. p 5-6)

22      Holding in the California case of People V.
Delgado (1989) 262 Cal Rptr 122, gives"

    "Informed consent means that the prisoner without duress
    or coercion, clearly and explicitly manifests consent to
    the proposed medication to the treating physician in writing.
    In order to obtain informed consent, the following information
    shall be given to the prisoner in a clear, and explicit
    manner" (a) The reason for treatment, that is, the nature of
    seriousness of the person's illness, disorder or defect.  (b)
    The nature of the procedures to be used in the proposed
    treatment, including its probable frequency and duration.
    (c) The probable degree and duration (temporary of permanant)
    of improvment or remission, expected with or without such
    treatment.  (d)...Incompetent of refusing medication...
    gravely disabled...danger to others, etc."

23      Petitioner did not become "frantic" during his
medication management appointment until after Respondent Kirby
//kastle on habeas corpus//

- 18 -

1  decided to change Petitioner's dosage to a level he knew would

2  be contrary to his working, current treatment plan.

3      24      The California Penal Code at Section §3521

4  provides that:

5      "For the purpose of this title, a prisoner shall be deemed to
6      have given informed consent [only] if each of the following
       conditions and satisfied; (a) Consent is given without duress,
7      coercion, fraud or undue influence  (b) The prisoner is
       informed in writing of the potential risks or bensfits, or
8      both of the proposed research (c) The prisoner is informed
       orally and in writing in the language in which the subject
9      is fluent..."

10     25      This statue is further definded in California

11  Walfare and Institutions Code, Section §5326.4 as:

12     "(a)...written informed consent means that a person knowingly
       and intelligently, without duress or coercion, clearly and
13     explicitly manifests consent to the proposed therapy to the
       treating physician and in writing on the standard consent form
14     prescribed in section §5326.4 et seq."

15     (see, Exhibit F, Ex. p 11 standard consent form)

16     26      Petitioner has spent several weeks in a manic,

17  anxious state, failing to eat or sleep because his relying

18  therapist neglected to properly review Petitioner's psychiatric

19  file (which was available on Respondent's desk while confronting

20  Petitioner) prior to their scheduled meeting.

21     27      Citing a popular California case involving the

22  proper treatment of prisoners with mental disabilities at

23  Keyhea V. Rushing (1986) 178 Cal App 3d 526 and thus holds:

24     "Both statutory and case-law make it clear, however, that
       medication furnished for mentally disabled persons must be
25     necessary and must be provided in such a way that is least
       restrictive or intrusive of the patient's individual freedom."

26                      CONCLUSION

27     28      Petitioner concludes that this argument askes the

28  ///
                      //kastle on habeas corpus//

1   Court to acknowledge the misuse of Respondent Kirby's position

2   with both a doctorate in Psychiatricy and Neurology, when she

3   is confronted by a prisoner regarding his recommended course of

4   treatment, which Respondent obviously took as a challenge of

5   her professional position, thus failing to treat Petitioner as

6   a mentally disabled person.

7       29      Respondent Kirby along with her Technician

8   Respondent Cahalan did indeed use Deliberate Indifference with

9   regard to their treatment of Petitioner.

10      30      Petitioner prays that this Court will grant his

11  requested relief issuing an order to the CDCR to return his

12  forfeited earned good-time credits.  As for Respondent,

13  perhaps the State will review Respondent Kirby's prior records

14  for further acts of misconduct of California mentally ill

15  inmates, and stall her less-than-adequate psychiatric

16  techniques from harming others at a time the prison system is

17  so rotten with medical misconduct.

18                      CONTENTION

19                          3

20
    PRISON ADMINISTRATIVE COORDINATOR FAILED TO PROCESS
21  PETITIONER'S EXHAUSTIVE APPEAL THUS DENYING PETITIONER
    DUE PROCESS UNDER THE LAW, THUS VIOLATING THE COURT'S
22      ORDER OF, IN RE MUSZALSHI (1975) 51 CAL APP 500;
        PETERSON V. LAMPERT (9TH CIR 2002) 277 F3D 1073;
23  AS WELL AS THE UNITED STATES CONSTITUTIONAL 5TH AND 14TH
                        AMENDMENTS
24
                        ARGUMENT
25
26      31      An inmate who is planning to file a petition

27  for Writ of Habeas Corpus in the State Court against a prison

28  employee must first, "exhaust administrative remedies" by using

                //kastle on habeas corpus//

                        - 20 -

1  any available administrative appeal process.  (see, In re Strick

2  (1983) 148 Cal App 3d 906, 911; In re Dexter (1979) 25 Cal 3d

3  921, 925; In re Muszalski (1975) 52 Cal App 3d 500, 503].

4      32      The doctrine of exhaustion of administrative

5  remedies has not hardened into inflexable dogma.  It contains

6  its own execeptions.

7      33      In the California case of Ogo Associates V.

8  City of Torrance (1974) 37 Cal App 3d 830, 834 (for example,

9  exhaustion is not required in the administrative remedy is

10  "unavailable" or "inadequate") (see also, White V. California

11  (1987) 195 Cal App 3d 452, 464; Glendale City Employees

12  Association, Inc. V. City of Glendale (1975) 15 Cal 3d 328, 342)

13     34      The Ninth Circuit Court of Appeals holds that in

14  Peterson V. Lampert (9th Cir 2002) 277 F3d 1073, "[a] federal

15  claim not fairly presented if court must read beyond the petition

16  or brief to find presence of such a claim".  (see also,

17  Kelly V. Small (9th Cir 2003) 31 F3d 1063; Rhines V. Weber (2005)

18  125 S Ct 1528; 161 L Ed 2d 440, if petitioner had good cause for

19  failure to exhaust, his unexhausted claims are potentially

20  meritorious, and there is no indication that the petitioner

21  engaged in intentionally dilatory tactics, federal court may

22  grant a request for stay and abeyance); Olivera V. Giurbino

23  (9th Cir 2004) 371 F3d 569.

24     35      As shown in the Petitioner's Administrative

25  Appeal,(Exhibit B et seq.) Petitioner was continously blocked

26  by Respondent Eloy Medina, by his use of the CDCR-695, "Inmate/

27  Parolee Appeals Screening Form", which Petitioner contends

28  Mr Medina used this form "frivoliously", thus denying Petitioner

//kastle on habeas corpus//

- 21 -

1  any right to Due Process afforded by the 8th and 14th

2  amendments of the United States Constitution.

3      36      Moreover, a prisoner should file an administrative

4  appeal even when there may be an exception to the exhaustion

5  requirement. Because the courts generally are reluctant to

6  invoke an exception to the exhaustion requirement, filing an

7  appeal will show that an attempt was made to resolve this

8  matter, administratively.

9                          CONCLUSION

10

11      37      In conclusion, citing <u>Preiser V. Rodriguez</u> (1973)

12  411 U S 475, "...which held that the sole remedy in Federal

13  Court for a prisoner seeking restoration of good-time credits,

14  is thus a Writ of Habeas Corpus."

15      38      It is further quite unlikely that even if

16  Petitioner had been able to be granted Due Process to exhaust

17  his administrative appeal, it would not have been granted, the

18  CDCR has kept reluctant to grant a restoration of forfeited

19  earned good-time credits. As well any investigation which

20  might have surfaced actionable evidence, could not exist outside

21  of some type of "evidenciary hearing".

22      39      Through Court Ordered "Integratories" the Petitioner

23  can show further evidence that the Respondent acted in an

24  illegal manner.

25      40      Petitioner prays this Court will grant the sought

26  relief mentioned in the foregoing petition, and issue a Writ

27  of Habeas Corpus.

28  ///

                    //kastle on habeas corpus//

                            - 22 -

1

## VERIFICATION

2          41          I, Chad Edward Kastle CDCR P-86598 declare:

3          I am the Petitioner in the aforementioned matter.  I have

4     read the foregoing petition for Writ of Habeas Corpus and

5     Memorandum of Supporting Points and Authorities, and that the

6     facts stated herein are true of my own knowledge, except as to

7     matter that are therein stated on my own information and belief,

8     and as to those matters I believe them to be true.

9          I declare under penalty of perjury  of law under the

10    State of California that the foreging is true and correct, and

11    that this verification was executed at Soledad California, on

12    the 12th day of December  2007.

13

14                                    Respectfully Submitted,

15

16                                    Chad E. Kastle, CDCR P86598
                                      Petitioner, In Pro se.

17

18

19

20

21

22

23

24

25

26

27

28

//kastle on habeas corpus//

- 23 -

1          SUPERIOR COURT OF CALIFORNIA

2               COUNTY OF MONTEREY

FILED

DEC 0 3 2007

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
NOEMI P. BECERRA DEPUTY

3

4   In re                              )   Case No.: HC 5929
                                       )
5        Chad Edward Kastle            )   ORDER
                                       )
6              On Habeas Corpus.       )
     _____ )

7

8          On October 5, 2007, Petitioner filed a petition for writ of habeas corpus.

9          On October 17, 2007 and November 6, 2007, Petitioner filed motions to amend the

10   petition. On November 8, 2007, the court granted these motions.

11         Petitioner is currently incarcerated at Salinas Valley State Prison.

12         Petitioner describes the background of the petition as follows.

13         On August 5, 2007, Petitioner was found guilty of refusal to test for controlled substances

14   and was assessed 90 days forfeiture of credits. (RVR B07-07-0036.)

15         On August 2, 2007, Petitioner submitted an appeal. On August 19, 2007, Petitioner sent

16   an Inmate Request for Interview. Petitioner has not submitted a copy of this request. On

17   September 5, 2007, Petitioner submitted an appeal. On September 6, 2007, the Appeals

18   Coordinator screened out his appeal. On September 17, 2007, Petitioner submitted an appeal.

19   On September 18, 2007, Petitioner's appeal was screened out.

20         In the instant petition, Petitioner claims that he was improperly found guilty of refusal to

21   test for controlled substances on the ground that his psychiatrist improperly disclosed

22   confidential information to the prison officials. Petitioner appears to claim that his psychiatrist

23   failed to obtain his written consent before changing his medication.

24         Petitioner's claims fail. Petitioner failed to exhaust his administrative remedies. *In re*

25   *Muszalski* (1975) 52 Cal.App.3d 500, 508.



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



JAN 2 9 2008

MICHAEL J. YEHLY, Clerk

By_____
          DEPUTY

In re CHAD EDWARD KASTLE,

on Habeas Corpus.

H032422
(Monterey County
 Super. Ct. No. HC5929)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

(Bamattre-Manoukian, Acting P.J., Mihara, J., and McAdams, J.,

participated in this decision.)

Dated    JAN 2 9 2008        BAMATTRE-MANOUKIAN, J.    Acting P.J.

Court of Appeal, Sixth Appellate District - No. H032422
**S160873**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re CHAD EDWARD KASTLE on Habeas Corpus

The application for stay and petition for review are denied.

SUPREME COURT
FILED

MAR 2 6 2008

Frederick K. Ohlrich Clerk

_____
Deputy

Chief Justice

<u>EXHIBIT C</u>

| <u>Page No.</u> | <u>Description of Document:</u> |
|---|---|
| 1-9 | Federal §1983 |
| 10-11 | Motion for Stay |
| 12-13 | ORDER granting Application for In Forma Pauperis |
| 14-15 | ORDER Dismissing Action without prejudice |
| 16 | JUDGMENT |



1 | Chad Edward Kastle
CDCR # P-86598
2 | Salinas Valley State Prison
31625 Highway 101, POB 1050
3 | Soledad, California 93960-1050
4 | **Pro se litigant,**

FILED

C3 JAN 28  AM 10: 48

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

6 | UNITED STATES DISTRICT COURT

7 | NORTHERN DISTRICT OF CALIFORNIA

9 | CHAD EDWARD KASTLE            )
10 |              Plaintiff,       )
                                  )  Case No.
11 |        vs.                    )
                                  )
12 | A. SCHWARZENEGGER, Govenor of )
     California;                   )
13 | E. BROWN JR., Attorney General)
     of California;                )
14 |  . TILTON, Secretary of California )
     Department of Corrections;    )
15 | M. EVANS, Warden of Salinas    )
     Valley State Prison;          )
16 | K. KIRBY, Medical Doctor;      )
     E. CAHALAN, Licensed Psychological )
17 | Technician;                    )
     M. SCHNEIDER, Psychologist;    )
18 | MR. JANSEN, Correctional Sergeant; )
     S. MARTINEZ, Correctional Officer; )
19 | E. MEDINA, Correctional Counsler; )
     et al.                        )
20 |              Defendant(s).     )
                                  )
21 |

**CV 08    00646**

**JF**

COMPLAINT

**42 U.S.C. §1983**

22 | I

23 | **JURISDICTION AND VENUE**

25 |     1.    This is a civil action authorized by 42 U.S.C.

26 | Section 1983 to redress the deprivation, under color of state

27 | law, of rights secured by the Constitution of the United States.

28 | The court has juristiction under 28 U.S.C. Section 1331 and

COMPLAINT            - 1 -

1    **1343**(A)(3).  Plaintiff seeks declaratory relief persuant to
2    28 U.S.C. §2201 and §2202.  Plaintiff's claims for injunctive
3    relief and authorized by 28 U..S.C. §2283 and §2284 and Rule 65
4    of the Federal Rules of Civil Procedure.

5        2.    The United States District Court for the Northern
6    District of California is the appropriate venue under 28 U.S.C.
7    §1391(b)(2) because it is where the events giving rise to the
8    claim occurred.

9                              II

10                          **PLAINTIFF**

11        3.    Plaintiff, CHAD EDWARD KASTLE, is and at all
12   times mentioned herein a prisoner of the state of California
13   in the custody of the California Department of Corrections.
14   He is currently confined in Salinas Valley State Prison in
15   Soledad, California.

16                             III

17
18                         **DEFENDANTS**

19        4.    Defendant, A. SCHWARZENEGGER, is the Govenor of
20   the state of California.  He is legally responsible for the
21   appointment of all personal currently employed by the state of
22   California and Salinas Valley State Prison.

23        5.    Defendant, E. BROWN JR., is the Attorney General
24   for the state of California.  He represents the People of the
25   State of California and all persons employed by the State of
26   California.

27        6.    Defendant, J. TILTON, is the Secretary for the
28   California Department of Corrections.  He is responsible for the

COMPLAINT              - 2 -

1   lawful operation of all State Prisons including Salinas Valley

2   State Prison.

3       7.    Defendant, M. EVANS, is the Warden of Salinas

4   Valley State Prison and as such is the legal custodian of

5   Plaintiff.

6       8.    Defendant K. KIRBY is a medical doctor currently

7   employed by the state of California at Salinas Valley State

8   Prison. Who, at all times mentioned in this Complaint, held

9   the position of Primary Care Psychotherapist for Plaintiff.

10      9.    Defendant, E. CAHALAN, is a Licensed Psychiatric

11  Technician currently employed by the State of California at

12  Salinas Valley State Prison.

13      10.    Defendatn, M. SCHNEIDER is a Psychologist currently

14  employed by the State of California at Salinas Valley State

15  Prison.

16      11.    Defendant, JANSEN, is a Correctional Sergeant

17  currently employed by the State of California at Salinas Valley

18  State Prison.

19      12.    Defendant, S. MARTINEZ, is a Correctional Officer

20  currently employed by the State of California at Salinas Valley

21  State Prison.

22      13.    Defendant, E. MEDINA, is a Correctional Counsler,

23  level II, currently employed by the State of California at

24  Salinas Valley State Prison as Appeals Coordinator.

25      14.    Each Defendant is sued individually and in his or

26  her official capacity. At all times mentioned in the Complaint

27  each Defendant acted under color of State Law.

28  ///

COMPLAINT        - 3 -

1

## III

2

### FACTS

3    15.    Plaintiff KASTLE was found guilty of violating

4  Title 15 of the California Rules and Regulations, Section 3290,

5  Subdivision (d) during a Prison Disciplinary Hearing log number

6  B07-07-0036, for refusing to sumbit to a urinalysis requested by

7  custody officer S. MARTINEZ on July 25, 2007.  (See Ex. A)

8    16.    Upon information and belief Plaintiff KASTLE

9  contends that the information leading custody officer to request

10  this test was erroneously given by Plaintiff's psychotherapist,

11  Dr. K. KIRBY, Defendant, when she disclosed confidential,

12  privileged information obtained during a treatment session

13  between Defendant KIRBY, Defendant CALAHAN, and Plaintiff

14  KASTLE.  (See Ex. A & C)

15    17.    Plaintiff KASTLE refused to submit to this test

16  because he believed this act to be an illegal breach of earlier

17  discussions held in a private, closed psychological session

18  between Defendant KIRBY, Defendant CAHALAN and Plaintiff KASTLE,

19  thus did not warrant such action under law.  (See Ex. A & C)

20    18.    Upon information and belief Defendant KIRBY again

21  violated Plaintiff KASTLE's rights when she denied Plaintiff any

22  right to refuse Defendant KIRBY to change his relying

23  psychotropic medication without first obtaining Plaintiff

24  KASTLE's written, informed consent required by state law.

25  (See Ex. C & E)

26    19.    Upon information and belief, during the course of

27  Plaintiff KASTLE's attempt to exhaust his administrative remedies

28  in accordance with 42 U.S.C. §1997e, the appeals coordinator

COMPLAINT            - 4 -

1  Defendant E. MEDINA, failed to file Plaintiff KASTLE's exhaustive

2  appeal, disregarded Plaintiff's request for an outcome of his

3  pending appeal. (See Ex. B)

4      20.    On August 02, 2007, seven days after the incident

5  for which this complaint derived from, Plaintiff KASTLE filed a

6  timely administrative appeal addressed to the Appeals

7  Coordinator. (See Ex. B, Aug. 2nd appeal)

8      21.    On August 07, 2007 Plaintiff KASTLE submitted

9  a request to Medical Records asking to be sent a copy of his

10  medical records indicating the July 25th incident.  Please Note

11  that Plaintiff could not use the appeals process to request this

12  information because only one appeal may be filed within a seven

13  day period in accordence with 15 CCR 3084.4(a);  Plaintiff had

14  just submitted the August 2nd appeal, five days prior.  After

15  the seven day period had passed, Plaintiff filed an appeal

16  directed to Medical Records, requesting to be sent all Medical

17  records.  This appeal was submitted to the appeals coordinator

18  on August 13, 2007.  (See Ex. B,et seq.)

19      22.    On August 19, 2007, after not hearing on the

20  procedings of either of his appeals (August 2nd & August 13th)

21  Plaintiff sent the Appeal Coordinator a request in an attempt

22  to know the proceedings of his two appeals.  (See Ex. B)

23      23.    On September 05, 2007, again after not hearing of

24  the proceedings of Plaintiff's appeals and requests, Plaintiff

25  sent the Appeals Coordinator a subsequest administrative appeal.

26  (See Ex. B, Sept. 5th appeal)

27      24.    The Subsequest appeal was immediately received and

28  delivered to Plaintiff on September 22, 2007.  The appeal was

COMPLAINT       - 5 -

1  attached to an Inmate/Parolee Appeal Screening Form, (CDC695)
2  to which the Appeals Coordinator, Defendant MEDINA rejected.
3  Reason stated for the rejection was that the appeal was not an
4  appeal, but a Request for Interview (CDC-GA-22).  I was directed
5  to send the request for interview CDC-GA-22 form to Medical.

6       25.    Defendant MEDINA failed to address the appeal, but
7  instead addressed only the attached copy of the Request for
8  Interview (which was submitted as an exhibit accompanyment to
9  the appeal).  The face of the Screening Form states that the
10 Screening action may not be appealed.  (See Ex. B)

11      26.    Plaintiff KASTLE's August 2nd, 2007 appeal was
12 never recognized or addressed by the appeals coordinator.  The
13 action for which Plaintiff was attempting to exhaust under
14 42 U.S.C. §1997e, was now time barred according to California
15 Statute at 15 CCR §3084.7(c).  (See Ex. B)

16      27.    Plaintiff KASTLE, being that he could not file
17 an appeal contesting the Defendant's rejection of his appeal,
18 filed an entirenly new appeal on September 17th, 2007.  In this
19 appeal Plaintiff addressed all issues, and requested a time
20 extension with which to file a new appeal, in order to comply
21 with his exhaustion requirements under 42 U.S.C. 1997e.
22 (See Ex. B)

23      28.    Plaintiff's September 17th appeal was again
24 rejected by Defendent MEDINA on September 18, 2007 and returned
25 to Plaintiff KASTLE.

26      29.    Plaintiff KASTLE filed a Petition for Writ of
27 Habeas Corpus in the Monterey Counry Superior Court in Soledad,
28 California, Case Name In re Chad Edward Kastle, Case Number

COMPLAINT                          - 6 -

1  HC5929. The Petition was denied by the Honorable Stephen

2  Sillman on December 3, 2007. A Motion in Opposition to the

3  Court's Notice of Denial was filed on December 12, 2007.

4     30.    Plaintiff KASTLE has sence filed his Petition in

5  the California Court of Appeals, and currently awaits exceptance

6  by the Court.

7     31.    On August 5th, 2007, Plaintiff KASTLE was found

8  guilty of violating California Statute 15 CCR §3090(d) and

9  assessed ninty (90) days loss of good-time credits among other

10  things.

11                              IV

12                EXHAUSTION OF LEGAL REMEDIES

13     32.    Plaintiff KASTLE used the prisoner grievance

14  procedure available at Salinas Valley State Prison to try and

15  solve the problem. On August 2, 2007 Plaintiff KASTLE presented

16  the facts relating to his complaint. On August 19, 2007

17  Plaintiff KASTLE submitted a request to know why he had not been

18  notified of the proceedings of his August 2, 2007 appeal. On

19  September 5, 2007 Plaintiff KASTLE submitted a subsequent appeal

20  as he had still not heard of the proceedings of his appeal and

21  request. On September 22, 2007 Plaintiff's September 5, 2007

22  appeal was acknowledged and rejected. On September 17, 2007

23  Plaintiff submitted a 3rd Appeal and 4th notice of his appeal.

24  On September 18, 2007 this appeal was too rejected. Plaintiff

25  was diligent in his attempt to exhaust his 42 U.S.C. 1997e

26  duties, but was blocked by Defendant MEDINA from suceeding.

27  (See Ex. B pages 1-17)

28  ///

COMPLAINT            - 7 -

V

**LEGAL CLAIMS**

33. Plaintiff realleges and incorporates by reference paragraphs 1 - 32.

34. The deprivation of Plaintiff's earned good-time, through the act of the Defendant's errors and negilegence attributable to violations of the United States Constitional fourth, fifth, eighth and fourteenth Amendments .

35. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

VI

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this court enter judgement granting Plaintiff:

36. A declaration that the acts and omissions described herein violated Plaintiff's rights under the United States Constitution.

37. A preliminary injunction ordering Defendants to re-organize and repair the Administrative Appeals Process.

37. Compensatory damages in the amount of $9,000.00 against Defendant KIRBY.

38. Punitive damages in the amount of $5,000.00 against Defendant EVANS.

COMPLAINT - 8 -

1    39.    A jury trial on all issues triable by jury.

2    40.    Plaintiff's cost in this suit.

3    41.    Any additional relief this court deems just, proper,

4    and equitable.

5    DATED: 12/24/07                    Respectfully Submitted,

6

7                                       Chad Edward Kastle
                                        CDCR # P-86598
8                                       Salinas Valley State Prison
                                        31625 Highway 101, POB 1050
9                                       Soledad, California 93960-1050

10

11                          **VERIFICATION**

12

13    I have read the foregoing complaint and hereby verify that

14    the matters alleged therein are true, except as to matters

15    alleged on information and belief, and as to those, I believe

16    them to be true.  I certify under penalty of perjury that the

17    foregoing is true and correct.

18    Executed at Soledad, California on: 12/24/07

19                                       Chad E. Kastle CDC# P86598
                                        Plaintiff, In pro se.
20

21

22

23

24

25

26

27

28

COMPLAINT                      - 9 -

1  Chad Edward Kastle
   CDCR # P-86598
2  Salinas Valley State Prison
   31625 Highway 101, POB 1050
3  Soledad, California 93960-1050

4  **Pro se litigant,**

5

6                    UNITED STATES DISTRICT COURT

                     NORTHERN DISTRICT OF CALIFORNIA
7

8  CHAD EDWARD KASTLE                    )
9                     Plaintiff,         )          CV-08-00646-JF (PR)
                                         )
10         vs.                           )
                                         )          MOTION FOR LEAVE TO FILE AN
11 A. Schwarzenegger; E. Brown Jr.;      )               AMENDED COMPLAINT
   S. Tilton; M. Evans; K. Kirby;        )
12 E. Cahalan; M. Schneider; [] Jansen;  )
   S. Martinez; E. Medina; et al.        )
13                                       )
                     Defendant(s).       )
14                                       )

15

16         Plaintiff KASTLE, persuant to Rules 15(a) and 19(a),

17 Fed. R. Civ. P., requests leave to file an amended complaint thus

   adding evidence of further being able to exhaust his administrative
18
   remedies where previously the defendant(s) had denied plaintiff
19 of this.

20         1.    The defendant has agreed to except a late filing of

21 the plaintiff's exhaustive administrative appeal.  (see as

22 attached amendment to this petition an Exhibit (Ex "I"))

23         2.    Being that the defendant has accepted the Exhaustive

   Appeal, contrary to their previous denials to do so, the plaintiff
24
   requests a stay on this petition until such time that the complaint
25 has been adjucated at the administrative level, or until the

26 exhaustive process is complete persuant to 42 USC §1997e.

27         3.    This court should grant leave freely to amend a

28 complaint, or [to grant a stay of petition], please see the

   KASTLE ON MOTION FOR LEAVE

                              - 1 -

1 | citation at <u>Foman v. Davis</u> (1962) 371 U.S. 178, 182.

2 | DATED: 3-6-08                    Respectfully Submitted,

3 |

4 |                                 Chad E. Kastle, P86598
                                    Plaintiff, In Pro Per.
5 |

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

KASTLE ON MOTION FOR LEAVE

- 2 -

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| CHAD EDWARD KASTLE | ) | No. C 08-0646 JF (PR) |
| Plaintiff, | ) ) | ORDER GRANTING |
| | ) | LEAVE TO PROCEED IN |
| v. | ) | FORMA PAUPERIS |
| | ) | |
| A. SCHWARZENEGGER., et al., | ) | |
| | ) | |
| Defendants. | ) | (Docket Nos. 2, 4) |
| | ) | |

Plaintiff's motion to proceed in forma pauperis (docket no. 1) is GRANTED. The total filing fee that ultimately will be due is $ 350.00. In view of Plaintiff's lack of income and low account balance over the last six months, no initial partial filing fee is due. Funds for the filing fee will be taken from income to Plaintiff's account in accordance with 28 U.S.C. § 1915(B)(1). A copy of this Order and the attached instructions will be sent to Plaintiff, the prison trust account office, and the Court's financial office.

This order terminates Docket Nos. 2 & 4.

IT IS SO ORDERED.

DATED: _____5/15/08_____

JEREMY FOGEL
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

**The prisoner's name and case number must be noted on each remittance.** The initial partial filing fee is due **within thirty days** of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:    Plaintiff/Petitioner
       Finance Office

Order of Dismissal
G:\PRO-SE\SJ.JF\CR.08\Kastle646ifp.wpd                2

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| 11 | CHAD EDWARD KASTLE ) | No. C 08-0646 JF (PR) |
| 12 | Plaintiff, ) | ORDER OF DISMISSAL; DENYING MOTION FOR |
| 13 | v. ) | LEAVE TO AMEND |
| 14 | A. SCHWARZENEGGER., et al., ) | |
| 15 | Defendants. ) | (Docket No. 6) |
| 16 | _____ ) | |

17      Plaintiff, a California prisoner proceeding pro se, filed a civil rights complaint

18   pursuant to 42 U.S.C. § 1983. He has been granted leave to proceed in forma pauperis.

19   On March 10, 2008, he filed a motion for leave to file an amended complaint. In the

20   motion, Plaintiff indicates that he has not exhausted his administrative remedies, and he

21   requests that the Court "grant a stay of petition." The Court dismisses this action without

22   prejudice for failure to exhaust his administrative remedies, and denies the motion to file

23   an amended complaint (Docket No. 6).

24      A federal court must conduct a preliminary screening in any case in which a

25   prisoner seeks redress from a governmental entity or officer or employee of a

26   governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify

27   any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a

28   claim upon which relief may be granted or seek monetary relief from a defendant who is

1   immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be

2   liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

3   1988).

4        The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be

5   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

6   law, by a prisoner confined in any jail, prison, or other correctional facility until such

7   administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

8   Exhaustion is mandatory and no longer left to the discretion of the district court.

9   Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731,

10  739 (2001)).

11       Furthermore, the PLRA exhaustion requirement requires "proper exhaustion" of

12  available administrative remedies. Id. at 2387. The plain language of the PLRA requires

13  that *prior to filing suit*, all "administrative remedies available [must be] exhausted." 42

14  U.S.C. § 1997e(a). The Ninth Circuit has interpreted 1997e(a) to mean that an action

15  *must* be dismissed unless the prisoner exhausted his available administrative remedies

16  *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending.

17  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). As Plaintiff has indicated that

18  he did not exhaust all of his available administrative remedies prior to filing the instant

19  action, the instant complaint is DISMISSED without prejudice for failure to exhaust his

20  administrative remedies prior to filing this action. The motion for leave to file an

21  amended complaint (Docket No. 6), and Plaintiff's for a "stay of petition" is DENIED.

22  Plaintiff may file a new complaint in a new civil rights action once he has exhausted his

23  administrative remedies.

24       The Clerk shall terminate any motions and close the file.

25       IT IS SO ORDERED.

26  DATED: _5/9/08_

    JEREMY FOGEL
27  United States District Judge

28

Order of Dismissal
G:\PRO-SE\SJ.Jf\CR.08\Kastle646disexh.wpd         2

Salinas Valley State Prison
Chad Kastle  P86598
PO Box 1050 (B6-102)
31625 Hwy 101
Soledad CA 93960-1050

STATE PRISON
GENERATED

JUN 30 2008

U.S. District Court
Northern District of Cali
San Jose Division
280 S. First #3035
San Jose CA 95113-3099



UNITED STATES POSTAGE

1    immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be

2    liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

3    1988).

4        The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be

5    brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

6    law, by a prisoner confined in any jail, prison, or other correctional facility until such

7    administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

8    Exhaustion is mandatory and no longer left to the discretion of the district court.

9    Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731,

10   739 (2001)).

11       Furthermore, the PLRA exhaustion requirement requires "proper exhaustion" of

12   available administrative remedies. Id. at 2387. The plain language of the PLRA requires

13   that *prior to filing suit*, all "administrative remedies available [must be] exhausted." 42

14   U.S.C. § 1997e(a). The Ninth Circuit has interpreted 1997e(a) to mean that an action

15   *must* be dismissed unless the prisoner exhausted his available administrative remedies

16   *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending.

17   McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). As Plaintiff has indicated that

18   he did not exhaust all of his available administrative remedies prior to filing the instant

19   action, the instant complaint is DISMISSED without prejudice for failure to exhaust his

20   administrative remedies prior to filing this action. The motion for leave to file an

21   amended complaint (Docket No. 6), and Plaintiff's for a "stay of petition" is DENIED.

22   Plaintiff may file a new complaint in a new civil rights action once he has exhausted his

23   administrative remedies.

24       The Clerk shall terminate any motions and close the file.

25       IT IS SO ORDERED.

26   DATED:  5/9/08

     JEREMY FOGEL
27   United States District Judge

28

Order of Dismissal
G:\PRO-SE\SJ.Jf\CR.08\Kastle646disexh.wpd          2

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

DEC 0 3 2007

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
NOEMI P. BECERRA DEPUTY

| | |
|---|---|
| In re | )   Case No.: HC 5929 |
| | ) |
|     Chad Edward Kastle | )   ORDER |
| | ) |
|          On Habeas Corpus. | ) |
| | ) |

On October 5, 2007, Petitioner filed a petition for writ of habeas corpus.

On October 17, 2007 and November 6, 2007, Petitioner filed motions to amend the petition. On November 8, 2007, the court granted these motions.

Petitioner is currently incarcerated at Salinas Valley State Prison.

Petitioner describes the background of the petition as follows.

On August 5, 2007, Petitioner was found guilty of refusal to test for controlled substances and was assessed 90 days forfeiture of credits. (RVR B07-07-0036.)

On August 2, 2007, Petitioner submitted an appeal. On August 19, 2007, Petitioner sent an Inmate Request for Interview. Petitioner has not submitted a copy of this request. On September 5, 2007, Petitioner submitted an appeal. On September 6, 2007, the Appeals Coordinator screened out his appeal. On September 17, 2007, Petitioner submitted an appeal. On September 18, 2007, Petitioner's appeal was screened out.

In the instant petition, Petitioner claims that he was improperly found guilty of refusal to test for controlled substances on the ground that his psychiatrist improperly disclosed confidential information to the prison officials. Petitioner appears to claim that his psychiatrist failed to obtain his written consent before changing his medication.

Petitioner's claims fail. Petitioner failed to exhaust his administrative remedies. *In re Muszalski* (1975) 52 Cal.App.3d 500, 508.

1    To the extent that Petitioner argues that his appeal was improperly screened out, his

2    argument fails. Petitioner fails to meet his burden of explaining how his appeal was improperly

3    screened out. See *People v. Duvall* (1995) 9 Cal.4th 464, 474. After Petitioner's appeal was

4    screened out on September 18, 2007, he failed to follow the appeals coordinator's instructions.

5    On September 18, 2007, Petitioner's appeal was screened out because 1) his appeal contained

6    numerous and separate issues and 2) Petitioner failed to attach a complete final copy of the RVR.

7    The screen out states in part, "If you allege the above reason is inaccurate, then attach an

8    explanation on a separate piece of paper, or use the back of this screen out—do not write any

9    more on the appeal itself. Please return this form to the Appeals Coordinator with the necessary

10   information attached." Petitioner fails to explain why he did not submit his explanation to the

11   appeals coordinator after Petitioner's appeal was screened out on September 18, 2007. *Duvall*,

12   *supra*, 9 Cal.4th 464, 474.

13       Accordingly, the petition is denied.

14       IT IS SO ORDERED.

15   Dated: 12-03-07

16

17       Hon. Stephen A. Sillman
         Judge of the Superior Court

18

19

20

21

22

23

24

25